**ILLINOIS TOOL WORKS, INC.,**
**Plaintiff-Appellee,**

v.

**CONTINENTAL CAN COMPANY, Inc.,**
**Defendant-Appellant.**

**No. 16500.**

United States Court of Appeals
Seventh Circuit.

July 8, 1968.

Rehearing Denied Sept. 10, 1968.

Fred S. Lockwood, John D. Dewey, John L. Alex, Chicago, Ill., for defendant-appellant.

James P. Hume, Granger Cook, Jr., Chicago, Ill., Hume, Clement, Hume & Lee, Chicago, Ill., for plaintiff-appellee; Richard R. Trexler, Robert W. Beart, Chicago, Ill., of counsel.

Before DUFFY, Senior Circuit Judge, and KILEY and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

This is a patent infringement action seeking damages and injunctive relief against Continental Can Company, Inc. (Continental). The district court found the patents in suit valid and infringed, and entered an order requiring an accounting and restraining Continental from further infringement.[1] The injunction and accounting were stayed pending appeal. We affirm.

Plaintiff Illinois Tool Works, Inc. (Illinois Tool), a Delaware corporation, with principal place of business in Illinois, is assignee and owner of Edwards Patent #3,139,213 (#213) covering nestable thin wall plastic drinking cups; and Patent #3,061,139 (#139) covering a self-venting plastic container and lid, used primarily to contain cottage cheese.

---

1. The court denied Illinois Tool's request for attorneys' fees and treble damages for willfulness.

Illinois Tool's Conex Division manufactures and sells the products covered by the patents. Continental's Bondware Division manufactures and sells the accused plastic cups and containers.

Continental defended on the usual grounds of invalidity and non-infringement. Invalidity was asserted on the grounds of anticipation by the prior art, obviousness, vagueness of the Edwards claims and lack of "inventive novelty." The non-infringement defense was based on alleged differences between the Continental nestable cups and plastic cottage cheese containers and the plaintiff's patents; and file wrapper estoppel based on Edwards' abandonment of certain claims in the Patent Office.

The district court in a 107-page memorandum found that the prior art patents and uses were not sufficiently identical to the Edwards patents to constitute anticipation; that the evidence "clearly" favored Illinois Tool on the issue of obviousness; that the claims were sufficiently defined; and that "inventive novelty" is no longer a valid test of inventiveness and that the patent is "new." On infringement, the court found the "means, operation and result" of Continental's nestable cups identical to those of plaintiffs; and that its cottage cheese container was "in all respects * * * location, operation, principle and result" identical to plaintiff's. The court's judgment concluded that plaintiff's #213 patent claims 1, 5, 6 and 9 were valid and infringed, and plaintiff's #139 claims 1 and 3 through 13 were valid and infringed.

#213

■ Patent #213[2] issued June 30, 1964, upon application filed December 13, 1962. The application stated that the object of the patent was "to provide a cup, particularly a throw-away cup, which is so configured that a plurality of such cups can be stacked in telescopic relation without wedging together." This stacking capacity, called nesting, is well known in the art and is commonly observed in vending machines used for dispensing liquid in plastic drinking cups. Stacking rings are used to minimize the degree of contact between cups in the stack and thereby prevent the cups from becoming wedged together.

The design of Illinois Tool's principal cup, one of five embodiments of patent #213, is of a thin walled plastic cup with a body that tapers upward and outward from a recessed bottom to a lipped top. On the outside of the cup between the top and center of the body is a series of step-like cylindrical rings circling the cup. The walls of the top ring incline up and in, forming a horizontal shelf at both the top and bottom of the ring in a Z-configuration. When stacked, the lower shelf of the top ring of one cup is supported on the upper shelf of the top ring of the next lower cup. The result is that when stacked, only the surfaces of the shelves are engaged, and the cups are nested but not wedged. The lower rings in the series are "gripping rings" which prevent the cup from slipping from the hand of the user.

The district court found that the 213 patent calls for a single circumferentially continuous Z-shaped stacking ring configuration located below the rim on the side wall of a thin wall plastic cup. It concluded that this stacking arrangement provides protection against the wedging of stacked cups while at the same time utilizing the natural flexibility of thin wall plastic to cushion shocks and thereby prevent cup breakage during shipping. We believe that the evidence supports these conclusions and we also agree with the district court's determination that nothing in the prior art anticipates these features under the exactness standard of Monroe Auto Equip. Co. v. Heckethorn Mfg. & Sup. Co., 6 Cir., 332 F.2d 406, 414, 415, and McCullough Tool Co. v. Well Surveys, Inc., 10 Cir., 343 F.2d 381, 398, or makes them obvious under the guidelines of Graham v. John

---

2. Patent #139 was developed earlier, but issued later, than #213.

Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545. We think the court's findings have substantial support in the record and that its conclusions are not erroneous.

In making its anticipation and obviousness arguments, Continental places its chief reliance on Aldington Patent #2,985,354. It admits that because the Patent Office issued the Edwards patent over the Aldington reference, the presumption of #213's validity is stronger than it might otherwise be.

Aldington's patent covers a lid, not a container. The problem Aldington solved in stacking lids is not the same problem solved by the 213 patent. The Z-shaped stacking ring in the Aldington lid covers the entire height of the lid side wall, whereas in #213 the stacking ring is above the middle of the cup. The arrangement in Aldington causes the bottom of one lid to rest on the top shoulder of a lower lid, thereby avoiding the nesting needed in the efficient stacking of deep walled containers such as the Edwards cup. The Aldington lids need only vertical spacing; unlike the nesting cups which must be spaced horizontally to avoid jamming in packaging, shipping and handling.

Continental relies also on the Geuder 795,437, Pfalzgraf 1,324,432, Amberg 2,707,588, Nowak 2,749,572, Flack 2,879,-917, and Caine 3,045,887 patents in the prior art. Of this group, only the Caine and Flack patents were before the Patent Office. Geuder and Pfalzgraf cover large non-seamless, rigid, heavy gauge metal wash tubs and the court found they had greatly differing characteristics from those inherent in the thin wall plastic containers covered by #213. Moreover, the Geuder patent does not disclose either a single Z- or S-shaped stacker ring, but instead utilizes either a series of four S-shaped rings or alternatively two unconnected beads,[3] one extending into the wash tub, and the other extending beyond the outside wall of the wash tub. In the Pfalzgraf patent the tub handles provide the primary stacking means while the Z-shaped ring in the side wall has no stacking function unless the tubs are tilted, and even then the ring is only partially operative. Amberg covers a paper container in which a solid paper-button in the bottom seems to be the primary stacking device. Amberg also shows a Z-shaped configuration at the lip of the cup, but there is no disclosure that it has a stacking function. Even if it did function as a stacker, its position at the rim would not anticipate the spacing of the Edwards ring. Nowak covers a plastic container but does not disclose that the curved rim at the top is a stacking ring, or if so that it reached the problem solved by positioning the stacker below the rim in #213.

Flack covers a thin walled plastic container, but the walls of the stacker ring are vertical and therefore do not have a Z-configuration. The vertical walls of Flack display the rigidity inherent in such a configuration and therefore do not have the shock absorbing quality of the 213 patent. The Caine patent covers a thin walled plastic container with a stacker ring which is neither Z-shaped nor continuous.

Miller, Continental's engineer, was working on developing thin wall plastic cups and food containers contemporaneously with Edwards. His DX-58 cup is relied on as anticipatory. The DX-58 cup has a segmented double stacking ring rather than a continuous single stacking ring. The effect of the double ring is to lessen rather than enhance the ability of the plastic cups to absorb shock. The result is that while the Edwards configuration reduces the probability of damage in handling and shipping, Miller's DX-58 cup actually increases the probability of damage. We think the court was not required to find that the claims of #213 read "squarely" or "clearly" on Miller's DX-58 cups. We accordingly see no merit in Continental's contention that Miller's activities amounted to a prior use which

---

3. A bead is a projecting rounded surface.

precludes the Edwards patent under Sec. 102(a).

Continental also claims that Miller's 1957 DX-133 half-gallon ice cream container anticipated the Edwards patent. The district court found that these containers were rectangular, had a double rim stacking configuration generally Z-shaped, but vertical at the four corners, and that these were not developed beyond the "initial design and testing phase." These findings have substantial support in the record. The court did not err in concluding that these Miller devices did not anticipate Edwards' nestable container invention, under 35 U.S.C. § 102. Monroe Auto Equip. Co. v. Heckethorn Mfg. & Sup. Co., 332 F.2d p. 415. Continental cannot argue on this record that it successfully carried its burden of proving that all the elements of #213 are found in Continental's DX-58 cup or its DX-133 ice cream container, doing substantially the same work in substantially the same way. Id. 414.

If Continental contends in this court that #213 is invalid for obviousness, we see no merit in the contention. The district court reviewed the pertinent prior art, both that cited to and that not cited to the Patent Office, and found in considerable detail the differences between that art and #213. The court determined that in view of the fact that Continental's engineer and expert, Miller, had made many unsuccessful attempts to solve the telescopic container packing and handling problem, #213 was not obvious to a person ordinarily skilled in the art. The court followed the guidelines in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, and we think did not err in its determination of the question of obviousness.

We see no merit either in the claim that the court erred in using Miller as the standard of ordinary skill. The district court thought Miller had extraordinary and expert skills in the art and inferred that if he could not solve the

problem in the years of experimenting he devoted to finding a solution, the invention in #213 was not obvious to an ordinarily skillful person. We are persuaded by the court's compelling logic that the extraordinary embraces the ordinary.

The district court gave the filing date of November 29, 1957, to claim 1 of #213 and the date of October 29, 1958, to claims 5, 6 and 9. Consequently, the court limited consideration of prior art to the period prior to these dates.

There is no "reversible error" shown in the court's giving Illinois Tool these filing dates. The application filed October 29, 1958, was divided in the Patent Office December 13, 1962, into the subject matter on which #213 was granted June 30, 1964, and into the subject matter of Edwards patent #3,-091,360 [4] granted May 28, 1963. Continental argues that claim 1 should be limited to the December 13, 1962, filing date because the quality of resiliency was not claimed until that date. However, Continental's expert witness Vandenburgh admitted that resiliency was inherent in the disclosures of the earlier application. The court did not err in fixing the filing dates and limiting consideration of Continental's activity to the period prior to these dates.

There is no merit in Continental's argument that the district court "redefined" the #213 patent claims to include "continuity of the Edwards stacking ring." The district court found that the patent had a "single circumferentially continuous Z-shaped stacking ring configuration." This is shown by the figures accompanying the application. The court did not redefine, or add to the claims.

The district court found a "real identity of means, operation and result" between #213 and Continental's cup, and that claims 1, 5, 6 and 9 of #213 are infringed by Continental's nestable cups. We think, as the district court did, that claim 1 of #213 reads literally on Con-

---

4. This patent is not in suit.

tinental's container and that the finding of infringement is substantially supported in the record. We cannot say that the court should not have found that although the deviation of the shoulder of the Continental container is slight and that of Edwards nearly 45%, the Continental shoulder is not oblique within the meaning of claims 5, 6 and 9. Some deviation from horizontal is necessary to permit the Z-shaped to achieve the desired resiliency. We find also that the fact there are variations in the thickness of Continental's plastic cup does not prevent Edwards' claims 1 to 6, calling for substantially uniform thickness, from reading upon it. We believe that in the context of the whole patent the thickness language requires only that the inner and outer surfaces of the cup have corresponding contours.

#139

Patent 139 relates to a plastic container and lid designed to hold food products. Prior to March, 1960, the date of the 139 patent application, Illinois Tool had produced plastic containers which were used in conjunction with plastic lids to hold cottage cheese. However, when these containers were filled with cottage cheese, their lids tended to dislodge due to a build-up of pressure inside the container as a result of gas produced by the natural fermentation of the cottage cheese. Edwards, Illinois Tool's engineer, then began a process of experimentation with various venting devices which would prevent pressure sufficient to dislodge the plastic lids from building up inside the containers. These experiments led to the 139 patent application which provides for an integral combination holding and venting means coacting with an internal circumferentially continuous groove means on a container to provide a self-venting package by which venting occurs without dislodgment of the lid so that after excess pressure is released the package reseals itself. The obvious advantage of this device is that it prevents dislodgment of the lid by permitting gas to escape from the container and then reseals itself to prevent spoiling.

Continental argues that the court should have found that the Edwards patent was invalid because it was anticipated by the prior art or because it was obvious in light of the prior art since, it claims, all Edwards did, by his own admission, was to take standard plastic lids and add vents.

In making its anticipation and obviousness defenses, Continental relies on the Mumford 2,953,272, Doe 2,286,070, Kempe 2,223,321, Goodwin 2,279,263, and Aldington 3,109,575 patents as well as on a metal cottage cheese container lid produced by Sterling Seal Company prior to the Edwards patent application.

Continental contends that the Sterling Seal container lid completely anticipates the claims of #139. However, there are substantial differences between the Sterling Seal lid and the 139 invention. The Sterling Seal lid is metal and not plastic, so that its characteristics do not lend themselves to the coactive integral holding and venting means of the Edwards container and lid. Actually the Sterling venting means are positioned differently than those in Edwards and are not integrated with the holding means as are the vents in Edwards.

The Mumford patent is for a plastic snap-on cap designed to be used with a glass container. There are several differences between Mumford and the Edwards patent. For, example, the glass bottle does not contain an internal circumferential groove and does not coact with the lid in performing the venting and sealing function. There is no integral holding and venting means disclosed by Mumford nor does Mumford involve the use of a one-piece cap as does Edwards.

The Doe paraffin treated paper milk bottle cap, and the Kempe and Goodwin paper milk bottle caps are less similar than the Mumford cap, and consequently we need not discuss them in detail in order to sustain the district court's findings that none of them anticipated

the claims of #139. The record also substantially supports the court's finding that Aldington's patent did not anticipate the #139 claims. The court found that Aldington neither provided for nor referred to venting or resealing. The purpose of Aldington was to prevent leakage or spillage by a resilient sealing function of the lid.

The district court narrowly construed the #139 claims to cover only a one-piece, snap-on, thin wall plastic lid with sealing means and integral holding and venting means, when used with a thin wall plastic container. But the court found that none of the above mentioned prior art would have made the subject matter of #139 obvious to a person skilled in that art, that the subject matter was novel and had never appeared before Edwards' development of the container and self-venting lid.

The court here also referred to Continental's engineer Miller's lack of success, in view of the prior art, in his expertly skilled attempts to produce a similar container, as substantial evidence of non-obviousness. Miller designed and tested a lid with vents in the bead, as in #139, but the lid was not accepted and was abandoned. We cannot say the court's findings were clearly erroneous.

The district court found against Continental's contention that claims 12 and 13, added to Edwards' application March 22, 1961, and July 23, 1962, respectively, are new claims covering continuous venting not disclosed in the original application; that the patented article was sold more than a year before the claims were added; and that consequently the two claims are invalid. We are persuaded by the court's reasoning that if the claims add new matter, the public right did not intervene because of the alleged sale of the original in 1960. And the court found, with substantial record support,[5] that the concept of continuous venting means, while not claimed originally, is readily apparent. This finding distinguishes Muncie Gear Works v. Outboard Marine & Manufacturing Co., 315 U.S. 759, 761, 62 S.Ct. 865, 86 L.Ed. 1171.

The district court concluded that Continental's devices infringed the #139 patent since it found the requisite identity of means, operation and result in Edwards' #139 claims 1 and 3 through 13, and in Continental's cottage cheese package and self-venting lid.

The Continental lid has the "integral holding and venting means," and the coaction between lid and container rim which the prior art relied on by Continental lacked. The holding and venting means are "downstream" from the sealing means in both the 139 and the Continental device. The holding means consists of the coaction between the lower edge of the lid bead and lower shoulder of the container grooves "which cut into" the bead of the lid. The result is to permit venting without exposing the food to spoilation. The court found the Continental product indistinguishable from the #139 patent claims. The court also found, on demonstrative evidence,[6] that in the normal use of the Continental product, in packaging cottage cheese, the Continental accused device seals, vents and reseals. The fact that the Continental container vents continuously when dry is of no consequence and cannot avoid infringement. There was testimony by Continental's witness that 95% of the accused devices were used in cottage cheese packaging. But even in a dry state, said the court, Continental's product infringes claims 12 and 13 of #139 covering continuous venting.

We see no merit in Continental's contention that in its device the package contents, and not the lid and container

5. Continental does not deny that in the district court its position was that the Edwards original application was "only slightly amended in unimportant respects."

6. Continental's package was tested in an experiment by Edwards in the district court by a monometer showing internal container pressure and its effect in breaking the seal, and in venting and resealing.

parts, is the sealing factor. The liquid contents merely creates a thin film between the sealing portions of the container and lid and does not in any way eliminate the sealing function of these parts.

We think there is ample evidence to sustain the contention that there is an identity of means, operation and result in Continental's accused devices and Edwards' #139 claims.

The judgment is affirmed.