**MALSBARY MANUFACTURING COMPANY, George Russell Tompkins and Rexarc, Incorporated, Plaintiffs,**

v.

**ALD, INC., Defendant.**

**No. 68 C 1804.**

United States District Court,
N. D. Illinois, E. D.

March 3, 1970.

Olson, Trexler, Wolters & Bushnell, Chicago, Ill., for plaintiffs.

Anderson, Luedeka, Fitch, Even & Tabin, Chicago, Ill., and Hyer, Eickenroht & Thompson, Houston, Tex., for defendant.

## MEMORANDUM OPINION

DECKER, District Judge.

This is a suit for infringement of Claim 5 of United States Patent No. 2,896,857, entitled "Washing Apparatus". The patent was issued to plaintiff George R. Tompkins on July 28, 1959, upon an application filed October 22, 1956 as a continuation of an application filed October 28, 1955. Joined as plaintiffs are Malsbary Manufacturing Company, the exclusive licensee of the patent, and one of its licensees, Rexarc, Incorporated.

Plaintiff Tompkins is a citizen of the State of Michigan; plaintiff Rexarc is an Ohio corporation with its principal place of business in that state; and plaintiff Malsbary is a California corporation with its principal place of business in that state. Defendant Ald, Incorporated, is a Delaware corporation with its principal place of business in Chicago, Illinois.

In response to the complaint alleging infringement, defendnat filed an answer and counterclaim, denying infringement and asserting that the patent is invalid and void (1) because anticipated by

the prior art; (2) because obvious to one skilled in the art; (3) for failure to claim an invention within the meaning of 35 U.S.C. § 112. Defendant further asserted that plaintiff Malsbary was guilty of patent misuse in that it "tied" the sale of unpatented goods to those covered by the patent, and based its royalty on both patented and unpatented goods.

This court has jurisdiction of this case under 35 U.S.C. §§ 271, 281 and under 28 U.S.C. §§ 1338(a), 2201; venue in this district is proper. The case was tried before the court on November 24 and 25, 1969. At trial the issues were narrowed, for defendant admitted infringement if the patent were found to be valid. In its post-trial brief, defendant also withdrew that part of its misuse defense based on the computation of the royalty by plaintiff Malsbary.

This memorandum opinion contains findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure. For reasons which will appear, I have determined that Claim 5 of the patent is valid and that plaintiff is not guilty of misuse so as to preclude enforcement thereof.

Before discussing the legal issues presented, it may be helpful to review the subject matter of the patent, its commercial history, and the events leading up to this lawsuit.

In the early 1950's, plaintiff Tompkins was an automobile dealer in Mount Pleasant, Michigan. Because car washing in the operation of his dealership had been a "headache", he decided to buy a commercial car washing machine. However, his investigation of the market disclosed that the available machines (a "travelling arch" unit, in which an inverted "U" shaped device moved back and forth over the automobile, and a rectangular box unit which "dropped down" over the automobile) were unsatisfactory because too large, cumbersome and expensive. In 1954, he made the car wash apparatus which is the basis for the patent in suit.

Tompkin's car wash machine consists of an endless generally rectangular overhead track, approximately the size of an automobile when viewed from above, upon which is mounted a carriage which supports a single spray arm in the form of an inverted "L". The horizontal section of the "L" extends over the body of the automobile, while the vertical section extends down almost to the floor. Both arms contain numerous spray nozzles which emit streams of water and soap. The carriage is driven by a motor[1] mounted on the track, causing the "L" to travel completely around the automobile while spraying the top, sides, front, and back. This combination of elements permits coin operated, unattended commercial car washing, and has been so exploited. Claim 5 of the patent claims this combination of track, spray arm, carriage support means and drive means.[2]

Tompkins began commercial manufacture of his machine in 1956, and by the time of trial had built and sold slightly less than 4500 of the water driven units.

---

[1] Machines manufactured by Tompkins have been driven almost exclusively by a turbine-type water powered motor, while the other plaintiffs and defendant have used an electric motor. The specification of Claim 5 provides that either type may be used.

[2] Claim 5 reads as follows:
"A vehicle washing apparatus for washing the top and side surfaces of the vehicle comprising a spray head mechanism having a generally L-shaped arrangement of spray nozzles and adapted to extend above and partly across the vehicle being washed and along the side thereof, an endless generally rectangular track corresponding generally to the length and width of the vehicle to be washed and adapted to be supported above the vehicle, carriage support means for said head mechanism movably mounted on said track, drive means in operative driving connection with said support means for moving said support means about said track and hence said head around the vehicle to be washed, said head mechanism depending below said track from said support means."

His first license was granted in 1956 to Wohlert Corporation, which had supplied parts to Tompkins and which subsequently had developed its own apparatus which was similar to that of Tompkins. Pursuant to this license, Wohlert agreed to pay a percentage royalty in return for the exclusive right to make and sell the electrically propelled model of the patented device.

Following a shift of personnel from Wohlert to plaintiff Rexarc in 1961, the license with Wohlert was terminated and a similar license was issued to Rexarc. Royalties from Wohlert to date of termination exceeded $11,000.

Plaintiff Malsbary came into the picture in 1967 when it entered into an agreement with Tompkins and Rexarc whereby it became the exclusive licensee of the patent. The agreement further provided for grant-backs to Tompkins and Rexarc.

Since 1945, Malsbary has been engaged in the manufacture of steam cleaning and pressure washer equipment for use in the automotive and construction equipment cleaning fields.[3] It entered the field of automatic car wash machines in 1964 with a coin operated "wand" type unit,[4] and subsequently experimented with the development of a "stationary arch" unit, which sprays the automobile as it moves through standing arches, and a "moving arch" unit, which sprays the standing automobile as the arch moves over it.

In 1966, Malsbary obtained from a Canadian company, and resold, "10 or 12" car wash machines similar to the one described by the Tompkins patent.

A patent search by Malsbary led to this patent, and the three party agreement referred to above followed. Tompkins has received $10,000 to date in royalties from Malsbary and more than $5,000 from Rexarc pursuant to these licenses.

In 1968, Malsbary granted a sub-license to Monorail, Inc., which has resulted in royalty payments to Malsbary approximating $10,000.

Defendant Ald began selling the allegedly infringing machines in January, 1968, purchasing them from Hurricane Car Wash Systems, Inc., and reselling them under its trade name "Aldomatic". In November of 1967, before sale of any such machines, Ald learned of the Tompkins patent at a trade show. Assured by Hurricane that their machine did not infringe, Ald made no search of the prior art.[5] It did, however, secure an indemnity agreement from Hurricane.

I turn now to a discussion of the issues raised by the pleadings and evidence.

The Supreme Court has stated that the patentability of a particular device depends "upon three explicit conditions: novelty and utility as articulated and defined in § 101 and § 102, and nonobviousness * * * as set out in § 103." Graham v. John Deere Co., 383 U.S. 1, 12, 86 S.Ct. 684, 691, 15 L.Ed.2d 545 (1966). Defendant does not challenge the utility of the patent, nor does it raise a serious challenge to its novelty.

The statutory requirement of novelty, 35 U.S.C. § 102,[6] directs the court's inquiry to the question whether the particular invention has, in fact, been made before. Graham v. John Deere Co.,

---

3. Pressure washer equipment, also called a "power pack", includes such items as water pumps, water heaters, water tanks, chemical pumps and chemical tanks, and is used to supply various kinds of car washing machines, including the machines manufactured by Malsbary pursuant to the Tompkins license.

4. "Wand" type units are do-it-yourself operations consisting of a wash bay, hose and pressure nozzle, and water and chemical supply equipment.

5. A search was made after this lawsuit was commenced.

6. This section provides in pertinent part: "A person shall be entitled to a patent unless—(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent * * * "

*supra*, at 12, 86 S.Ct. 684; Illinois Tool Works, Inc. v. Continental Can Company, 273 F.Supp. 94, 104 (N.D.Ill.1967), aff'd. 397 F.2d 517 (7th Cir. 1967). An alternative formulation of the test asks whether there is "disclosure in the prior art of a thing substantially identical with the claimed invention." 1 Deller's Walker on Patents § 57 at 237 (2d ed. 1964).

When measured against this standard, it is clear that the Tompkins patent satisfies the test of novelty. None of the prior art disclosed at trial, to be discussed herein, shows anticipation of the patent, for none of it by itself combines the "L" shaped spray arm with the rectangular track and motor driven carriage.

■ A more serious challenge is raised by the defense of obviousness. Under 35 U.S.C. § 103,[7] a patent is invalid if it would have been obvious to a person "skilled in the art." This section necessitates a factual inquiry under which "the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." Graham v. John Deere Co., *supra*, 383 U.S. at 17, 86 S. Ct. at 694. The relevant time for this inquiry is the time of invention, and courts must take care to avoid the use of hindsight in light of later disclosures. Zegers v. Zegers, Inc., 365 F.2d 156, 159 (7th Cir. 1966). Similarly, the "apparent simplicity of an invention when viewed in retrospect" is not indicative of obviousness. Amp Inc. v. Vaco Products Co., 280 F.2d 518, 521 (7th Cir.), *cert. den.* 364 U.S. 921, 81 S.Ct. 286, 5 L.Ed. 2d 260 (1960).

■■ In determining validity of a patent, the court is guided by the statu-

tory presumption of validity. 35 U.S.C. § 282. "This presumption is not an idle gesture," Copease Mfg. Co. v. American Photocopy Equipment Co., 298 F.2d 772, 777 (7th Cir. 1961), and the party asserting invalidity "has a heavy burden of establishing invalidity by clear and convincing evidence." Walt Disney Productions v. Fred A. Niles Communications Center, Inc., 369 F.2d 230, 234 (7th Cir. 1966). This presumption is strengthened where the validity of the patent is challenged on the basis of prior art cited by the patent office, but is nonexistent as against prior art not before the examiner. "Where the patent office cites some prior art, but not other equally relevant and similar prior art, the presumption is weakened only to the extent that the teaching of the uncited art is not disclosed in the cited art." Illinois Tool Works, Inc. v. Continental Can Company, *supra*, 273 F.Supp. at 111.

Defendant relies primarily on seven patents, only one of which was disclosed to the patent office. This patent, Klingensmith, U. S. Patent No. 1,148,690 (August 3, 1915), teaches an oblong overhead track with a movable carriage from which depends a hose for vehicle washing. The hose and carriage are manually pulled around the track to enable the user to reach all sides of the vehicle without the hose coming into contact with the vehicle. This device does not suggest a spray bar for wetting down the top or sides of the vehicle, nor does it suggest or would its function accommodate a motor driven carriage. It was designed to permit a user to spray various parts of the vehicle at his convenience, rather than for automatic and repeated movement of the carriage and load around the vehicle.

---

7. 35 U.S.C. § 103 provides:
"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

Nicholsburg, U. S. Patent No. 553,-291 (January 21, 1896), and Birch, British Patent No. 375,182 (June 23, 1932), are similar to Klingensmith in that they teach an overhead track with a manually operated hose depending therefrom for use in vehicle washing. Nicholsburg is less pertinent than Klingensmith; moreover, for it teaches a circular track. Although neither Nicholsburg nor Birch was cited by the patent office, they are disclosed by Klingensmith which was cited to the examiner, and thus they do not weaken the presumption of validity.

Defendant next relies on Baker, British Patent No. 717,025 (October 20, 1954) and Poliakoff, French Patent No. 1,028,242 (May 20, 1953). Both of these patents teach a generally "L" shaped single spray head designed to spray water through nozzles on to the top and sides of a vehicle. The inverted "L" is mounted on wheels, rather than an overhead carriage, however, and is manually moved along aside the car by an operator. Neither patent suggests regulated, motorized travel of the spray head in a predetermined path, and Baker teaches away from this concept somewhat by stating that "[n]o electric motor, engine or turbine is required for its operation." (Baker, page 2, column 1, lines 12 and 13). Both patents disclose the use of handles for manual operation.

Defendant makes much of the fact that neither Baker nor Poliakoff was considered by the patent office. However, Vani, U.S. Patent No. 2,676,600 (April 27, 1954), was brought to the examiner's attention, and it is plaintiffs' contention that Vani is more pertinent than Baker or Poliakoff.

Vani '600 discloses a mechanized "travelling arch" car wash. The patent teaches an overhead linear track and carriage, with inverted "L" shaped spray heads depending on both sides of the track. The spray heads reciprocate back and forth lengthwise above and beside the automobile, and "swing" part way around the front and back. Although the Vani spray heads cannot completely circle the car as the Baker and Poliakoff spray heads can, they do teach the "L" shape configuration and also disclose the combination with the overhead track, which Baker and Poliakoff do not disclose. I conclude, therefore, that the Vani '600, cited to the patent office, is more pertinent than Baker and Poliakoff and discloses virtually all of the prior art represented by those patents.

Defendant's final citations of prior art are Lawrence, U.S. Patent No. 2,175,608 (October 10, 1939) and Allred, U.S. Patent No. 2,823,409 (February 18, 1958). Both patents show a device used to blow lint off of textile making machinery by emission of streams of air from a blower attached to a powered carriage on an overhead track. The track may have various configurations, including rectangular, depending upon the size and location of the machines to be cleaned. These patents are non-analogous to some extent, for they do not involve water emission nor vehicle cleaning. Nor do they teach or suggest the use of a spray arm, "L" shaped or otherwise, and they do not suggest any means for providing a horizontally directed spray.

■ It is, of course, true that an inventor is charged with knowledge of all that the prior art discloses with respect to the subject matter of his invention, and a person skilled in the art is presumed to have had all relevant prior art at his disposal. See, e.g., Walker v. General Motors Corp., 362 F.2d 56, 60 (9th Cir. 1966). Defendant contends that it would have been easy for one skilled in the art to combine the elements of the prior art to achieve what Tompkins has achieved. I believe, however, that this contention relies too heavily on hindsight, and that the combination of these various patents, which are disparate in use and purpose, would not have been obvious to one skilled in the art at the time of the invention.

It is especially noteworthy in this regard that the patent office issued the patent although virtually all of the dis-

closures of the prior art were before it in Vani '600 and Klingensmith. This circumstance lends additional significance to the statutory presumption of validity. See, *e.g.*, Illinois Tool Works, Inc. v. Continental Can Company, *supra*, 273 F.Supp. at 111.

■ In addition, the file wrapper history discloses that Claim 5 was twice rejected by the examiner, and was approved by him only after amendment thereof, further detailed discussion of prior art by the patentee, and an interview with the patentee's counsel. Such careful consideration by the patent office is generally held to give additional weight to the presumption of validity. See, *e.g.*, Dal-Bac (Pty.), Ltd. v. Firma Astorwerk Otto Berning & Co., 244 F. Supp. 516, 524 (S.D.N.Y.1965); Grinnell Corporation v. American Monorail Company, 285 F.Supp. 219, 225 (D.S.C. 1967); Berry Brothers Corporation v. Sigmon, 206 F.Supp. 653, 663 (W.D.N. C.1962), *aff'd* 317 F.2d 700 (4th Cir.); McKay Co. v. Shott Mfg. Co., 25 F.Supp. 716, 719 (S.D.Ohio 1937); Modern Products Supply Co. v. Drachenberg, 152 F.2d 203, 205 (6th Cir. 1945). But see Technograph Printed Circuits, Ltd. v. Bendix Aviation Corporation, 218 F. Supp. 1, 23–24 (D.Md.1963), aff'd 327 F.2d 497 (4th Cir.), *cert. den.* 379 U.S. 826, 85 S.Ct. 53, 13 L.Ed.2d 36.

In an effort to counter the presumption and meet its "heavy burden of establishing invalidity by clear and convincing evidence," Walt Disney Productions v. Fred A. Niles Communications Center, Inc., *supra*, 369 F.2d at 234, defendant presented only one witness, Dr. John V. Pennington. He offered his opinion as an expert that the Tompkins apparatus would have been obvious to one skilled in the art at the time it was invented. This opinion was based primarily on his engineering experience and an analysis of the prior art.

I have concluded, however, that Dr. Pennington's testimony is not persuasive. Although a man of extensive experience in mechanical engineering, he conceded that he had never engaged in manufacturing, consulting or design work with regard to car washing machines. Thus his testimony is of little help in demonstrating the level of ordinary skill in the art, Graham v. John Deere Co., *supra*, 383 U.S. at 17, 86 S. Ct. 684, or in proving that the invention would have been obvious to one possessing such skill.

Plaintiffs' expert, Mowatt M. Hurst, testified that the invention would not have been obvious to one skilled in the art. Hurst has worked in the vehicle washing machine design field for approximately 20 years, and has been issued "12 or 14" patents relating to car washing machinery. He is unquestionably more familiar with the level of ordinary skill in the art than is defendant's expert, and accordingly his opinion testimony is entitled to greater weight than that accorded the opinion of Dr. Pennington.

■ Another factor which supports the conclusion of non-obviousness is the commercial success which the Tompkins patent has enjoyed. Technicon Instruments Corporation v. Coleman Instruments, Inc., 255 F.Supp. 630, 640 (N.D. Ill.1966), *aff'd* 385 F.2d 391 (7th Cir. 1967). Tompkins himself has sold almost 4500 units,[8] and substantial royalties have resulted from sales by licensees. Acquiescence by Malsbary, experienced in the manufacture of car wash machines, provides added indication of validity.

I conclude therefore that defendant has failed to satisfy its burden of demonstrating that the subject matter of Claim 5 would have been obvious to one skilled in the art.

---

8. Defendant attempts to attribute Tompkins' success with his own machine to the use of the water powered motor, which is not covered by Claim 5. No evidence to support this argument appears, however, and it is substantially weakened by defendant's admitted use of the elements of Claim 5 in its own machines. See, *e. g.*, Brown v. Brock, 240 F.2d 723, 728 (4th Cir. 1957).

Ald has also raised the question of whether Claim 5 adequately describes and claims the invention with the particularity and distinctness required by 35 U.S.C. § 112. Defendant has not identified the failings of the specification or claim, however, and none appear. Invalidity on this ground has not, therefore, been established.

Defendant's misuse defense, directed to plaintiff Malsbary, is premised on its contention that Malsbary has "tied" the sale of its unpatented pressure washer system to the sale of the patented washing apparatus. Such misuse, it is argued, is an extension of the limited patent monopoly granted which, therefore, precludes judicial enforcement of the patent. See, e.g., Morton Salt Co. v. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942); Berlenbach v. Anderson and Thompson Ski Co., 329 F.2d 782 (9th Cir. 1964), cert. den. 379 U.S. 830, 85 S.Ct. 60, 13 L.Ed.2d 39.

The only evidence of a "tie-in" which was presented at trial was testimony of Walter F. Malsbary, president of plaintiff. He confirmed that, when asked at his deposition if he would sell the patented apparatus alone, he replied, "No." He then stated at trial, "I would still be very reluctant to do that," and when asked why, he replied that "I would have to say 'No' without knowing what you are going to tie it in to and what results you were expecting as an end result." He then went on to explain that he would not want to risk his company's reputation, which would happen if the pressure wash system to be used to supply the washing apparatus were not compatible with that apparatus.[9]

■ I believe that this speculative response to a hypothetical question, fairly interpreted, does not show that the Malsbary Company refused to sell the washing apparatus without its own pressure wash system, but shows only that it would not sell the apparatus unless the purchaser bought its wash system or had or would obtain a comparable one, operationally compatible with the patented device. In other words, plaintiff would only "tie" the two systems if this were necessary to ensure the functioning of its patented product. Malsbary's later testimony bears this out, for he stated that his only refusals to sell the patented apparatus alone were in response to questions from dealers as to whether they could install the patented machine in wash bays already equipped with old pressure wash systems. He replied that they could not because the old pressure wash units had insufficient capacity to supply the patented device.[10]

■ The cases recognize that it is not unreasonable or unlawful for a seller or lessor to require that components to be used with its patented product meet certain operational specifications. International Salt Co. v. United States, 332 U.S. 392, 397–398, 68 S.Ct. 12, 92 L.Ed. 20 (1947); Dehydrating Process Co. v. A. O. Smith Corp., 292 F.2d 653, 656–657 (1st Cir. 1961), cert. den. 368 U.S. 931, 82 S.Ct. 368, 7 L.Ed.2d 194 (1961); Emsig Manufacturing Co. v. Rochester Button Co., 163 F.Supp. 414 (S.D.N.Y.1958); cf. Electric Pipe Line v. Fluid Systems, 231 F.2d 370 (2d Cir. 1956). The evidence adduced here shows no more than this.

■ Patent misuse is an equitable defense, premised in part on the ancient doctrine of "unclean hands" and in part on the policy of fostering the public interest by maintaining strict limitations on patent monopolies. When, as here, no attempt at extension of a monopoly appears, but only a proper business-motivated concern for the effective operation of the patented device, the underpinnings of the doctrine disappear. Accordingly, I conclude that plaintiff is

9. Tr. 134–135.

10. Tr. 148–149.

not barred from maintaining this infringement suit.[11]

 Judgment will be entered finding that Claim 5 of the patent is valid and infringed, and that the defense of misuse has not been established. Plaintiffs' evidence of "willful and wanton" infringement is insufficient to justify extraordinary damages under 35 U.S.C. § 284 or an award of attorney's fees under 35 U.S.C. § 285, particularly in light of the fact that defendant received assurances of non-infringement and a contractual indemnity from its supplier after learning of the patent.

Plaintiffs are directed to prepare and present an appropriate judgment order within 10 days.

11. It is also significant in this regard, although not dispositive, that no evidence was produced to show that Tompkins or Rexarc "tied" their sales of the patented apparatus to the sale of other products.