**MALSBARY MANUFACTURING COMPANY et al., Plaintiffs-Appellees,**

v.

**ALD, INCORPORATED, Defendant-Appellant.**

**No. 18655.**

United States Court of Appeals, Seventh Circuit.

Aug. 12, 1971.

Rehearing Denied Sept. 14, 1971.

Stevens, Circuit Judge, dissented and filed opinion.

Robert K. Schumacher, Chicago, Ill., William H. Drummond, Drummond & Phillips, Phoenix, Ariz., for defendant-appellant; Sidney Wallenstein, Wallenstein, Spangenberg, Hattis & Strampel, Morgan L. Fitch, Jr., Anderson, Lue-

deka, Fitch, Even & Tabin, Chicago, Ill., of counsel.

Richard R. Trexler, Chicago, Ill., Murray K. Hatch, Schapp & Hatch, San Francisco, Cal., for plaintiffs-appellees; John S. Fosse, Olson, Trexler, Wolters & Bushnell, Chicago, Ill., of counsel.

Before DUFFY, Senior Circuit Judge, and KILEY and STEVENS, Circuit Judges.

DUFFY, Senior Circuit Judge.

This is a patent infringement suit brought by the patentee, Tompkins, and two of the licensees under Tompkins' patent No. 2,896,857 [1] against defendant ALD, Incorporated, a distributor of automobile washing apparatus.

The Tompkins patent in suit relates to "washing apparatus, and more particularly to an apparatus for use in washing vehicles * * * which includes a movable carriage adapted to travel around a trackway * * * so that all of the various surfaces of the vehicle can be thoroughly and effectively washed."

Only Claim 5 of the patent in suit is alleged to be infringed. Defendant admits that its automobile washing apparatus literally infringes Claim 5. The only question before us is the validity of Claim 5.

Claims 1 to 4 pertain to a car washing apparatus in which the moving parts are powered by a water turbine. However, Claim 5 is broad enough to include washing apparatus in which the moving parts are powered by an electric motor rather than by a water turbine.[2]

The car washing apparatus here in question washes automobiles by a spraying action. No brushes are required.

In 1954, Tompkins owned an automobile agency and had problems with washing his stock of automobiles. He decided to purchase a car washer but found those available to be unsatisfactory. He then decided to design his own car washer.

In 1954, two basic types of spray car washers were known. One was a traveling arch which moved in a straight line from one end of the car to the other, spraying as it went (Weaver Device). The other was a rectangular manifold which encircled the car and moved vertically up and down, spraying as it went (Choldun Device).

Tompkins recognized the deficiencies in the then current car washing apparatus. The traveling arch type failed to spray and clean the ends of the automobiles as well as the sides. The rectangular vertical moving type was large, cumbersome, expensive, and required excessive pumping to supply enough water.

Tompkins originated the concept of mounting a spray head on a carriage for movement around the automobile in a pre-determined path on an endless generally rectangular track. The spray head contained an L shaped arrangement of spray nozzles extending horizontally partly across the automobile and downwardly along the sides so that the top, sides, and both ends of the car would all be washed by the spray as the carriage moved around the car on the track.

The Tompkins car wash was a success commercially. Up to the time of the trial, Tompkins had sold nearly 4500 car

---

1. Issued July 28, 1959, upon application filed October 22, 1956, as a continuation of co-pending application filed October 28, 1955.

2. Claim 5 reads in full: "A vehicle washing apparatus for washing the top and side surfaces of the vehicle comprising a spray head mechanism having a generally L-shaped arrangement of spray nozzles and adapted to extend above and partly across the vehicle being washed and along the side thereof, an endless generally rectangular track corresponding generally to the length and width of the vehicle to be washed and adapted to be supported above the vehicle, carriage support means for said head mechanism movably mounted on said track, drive means in operative driving connection with said support means for moving said support means about said track and hence said head around the vehicle to be washed, said head mechanism depending below said track from said support means."

washers for several million dollars in sales.

Defendant asserted a number of defenses including invalidity, non-infringement, and unenforceability by misuse. All of these defenses were waived with the exception of obviousness (35 U.S.C. § 103) and one of the two alleged counts for misuse.

The District Court, in a well considered opinion and judgment order, 310 F. Supp. 1112, found that Claim 5 was valid and non-obvious, and that there was no misuse. Defendant has now waived the misuse defense and on this appeal is relying solely on the question of obviousness.

The trial judge made the factual inquiries for determining non-obviousness required by Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The trial court then concluded that the subject matter of Claim 5 would not have been obvious to a person of ordinary skill in the art at the time the invention was made.

With reference to the requirement in Graham v. John Deere Co., *supra,* that the trial court make a factual inquiry into the level of ordinary skill in the art at the time the invention was made, it is apparent that the defendant herein did not offer or produce any real proof on that subject.

Since the "level of ordinary skill" in a particular art has not usually been defined in writing, the usual way of determining such level is by referring to the subjective reaction of a person thoroughly familiar with the particular art and, if possible, one who practiced the art at the crucial time in question.

Plaintiffs' witness Hurst testified that he was thoroughly conversant with the car-wash art in 1954, and had been engaged in designing, inventing and building car-wash apparatus since 1949. In discussing the testimony of Hurst, the District Court pointed out that Hurst had been issued twelve to fourteen patents relating to car washing machinery.

In contrast, defendant's witness Dr. Pennington's testimony showed his complete lack of experience in the car-wash art. Certainly his testimony was of little help to the District Court in demonstrating the level of ordinary skill in the art. The District Judge specifically found as a fact that the testimony of plaintiffs' witness Hurst was "entitled to greater weight than that accorded the opinion of Dr. Pennington." This finding has not been demonstrated to be clearly erroneous to us and we shall not disturb it.

With reference to the further inquiries required by Graham v. John Deere Co., *supra,* into the "scope and content of the prior art" and the "differences between the prior art and the claims at issue" (383 U.S. at 17, 86 S.Ct. at 694), we conclude that the District Court's analysis was correct here as well.

In making those inquiries and in reaching the ultimate issue of obviousness, the following patents have been offered in this litigation as being pertinent prior art: Klingensmith, U.S. Patent No. 1,148,690 (August 3, 1915); Vani, U.S. Patent No. 2,676,600 (April 27, 1954); Nicholsburg, U.S. Patent No. 553,291 (January 21, 1896); Birch, British Patent No. 375,182 (June 23, 1932); Baker, British Patent No. 717,025 (October 20, 1954); Poliakoff, French Patent No. 1,028,242 (May 20, 1953); Merancy, U.S. Patent No. 2,703,579 (March 8, 1955); Lawrence, U.S. Patent No. 2,-175,608 (October 10, 1939); Allred, U.S. Patent No. 2,823,409 (February 18, 1958). Of these, Klingensmith was called to the attention of the Patent Office during the prosecution of the patent in suit and Vani was cited as prior art by the Patent Office when this patent was issued.

Klingensmith disclosed a vehicle washing apparatus with an oblong overhead track. A wheeled carriage could be manually moved around the track and a rubber hose, which hung down therefrom, could be employed to wash a car. The trial court found that Klingensmith differed from the patent in suit in at least two respects. First, it did not contain a spray bar for wetting down the top and sides of a vehicle and secondly had no

means by which any automated drive force could be accommodated to the device.

Vani (600) disclosed a car washing apparatus containing two slightly curved tracks which were placed in a position roughly above the sides of a vehicle. Two L shaped spray heads were suspended from the tracks. They moved back and forth lengthwise along the vehicle, swinging only part way in front of or behind such vehicle at any given time. The District Judge found that Vani differed from the patent in suit in that Vani did not permit the full circling of the front and rear of a car and hence did not provide a complete washing.

Nicholsburg and Birch were found to be similar to Klingensmith in teaching an overhead track having a manually operated hose. But, as with Klingensmith, the operation differed from the patent in suit, which employs the overhead track instead as a means to mount a spray head which then travels in a pre-determined path in an automated manner.

Baker and Poliakoff, found by the District Judge to be less pertinent prior art than Vani 600, as with Vani dealt with L shaped spray heads for car wash use. However, Baker was not at all concerned with mounting from an overhead carriage, but rather employed a conventional dolly, which was manually wheeled around the floor. The same was true of Poliakoff, except that in that patent the spray heads were not even L shaped, but were instead "curved along the contours of the automobile."[3] Neither of these two patents attached the spraying devices to an overhead carriage which allowed travel in a pre-determined path. The District Judge was correct to conclude that both patents were thus less pertinent than the Vani 600 and also that they differed from the patent in suit in such respects.

Merancy was not discussed by the District Court in the memorandum opinion. We note, however, that it dealt with the "traveling arch car-wash apparatus",

similar to that previously referred to as the Weaver device, and equally different from the patent in suit with respect to incompleteness in the washing of fronts and backs of cars.

Finally, the Lawrence and Allred citations should be mentioned briefly. These devices did not concern car washing, but were used instead to blow lint off of textile making machinery. The District Judge correctly characterized these patents as "non-analogous."

In assessing the obviousness question, then, we agree with the District Court that the Klingensmith and Vani 600 patents are the two most pertinent prior art devices for our consideration. In our view, the prior art cited by defendant in the instant case contains no relevant teaching not found in the art before the examiner. Nicholsburg and Birch are less pertinent than Klingensmith; Baker and Poliakoff are less pertinent than Vani; Lawrence and Allred are not pertinent at all. We shall of course make our assessment also in light of the Merancy Patent and the Weaver and Choldun devices.

We conclude that the District Court did not err in its determination that the combination patent in suit is not obvious under 35 U.S.C. § 103 and that defendant has failed to meet its "heavy burden of establishing invalidity by clear and convincing evidence." Walt Disney Productions v. Fred A. Niles Communications Center, Inc., 369 F.2d 230, 234 (7 Cir. 1966). In our view the combination stated in Claim 5 makes possible an apparatus capable of automatic spray washing, which cleans the top, sides, and ends of an automobile efficiently, safely and without requiring the presence of· an operator. Vani did not allow such a complete washing and Klingensmith used neither the spray head device nor the motorized travel of the patent in suit. And, as heretofore stated, this invention in turn has given rise to a new industry, namely the coin-operated, non-attended car wash which may remain open 24

---

3. In the original patent: "courbé suivant les contours de l'automobile * * * "

hours a day and does not necessarily require the presence of an operator.

Contrary to the teaching of Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950), the elements of the patent in suit were combined in a new and useful way, not otherwise attainable under the prior art. Such a combination is clearly patentable: Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966); see also: Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 436 F.2d 1180 (7 Cir., 1971); Uarco Incorporated v. Moore Business Forms, 440 F.2d 580 (7 Cir., 1971).

In reaching our conclusion we bear in mind that the patent in suit was given careful consideration by the Patent Office, and that the Patent was issued only after an amendment to the original application and a private conference. The presumption of validity still stands (35 U.S.C. § 282), and has not been eroded by the citation to less pertinent prior art than that considered by the Patent Office. Illinois Tool Works, Inc. v. Continental Can Company, 273 F.Supp. 94, 111; affirmed 397 F.2d 517 (7 Cir. 1968).

■ We likewise do not think it error for the District Court to have mentioned the outstanding commercial success which the patent in suit has enjoyed. Of course we recognize that this factor, by itself, cannot be determinative of patent validity. But as a "secondary consideration" commercial success is a factor which still "may have relevancy." Graham v. John Deere Co., *supra*, 383 U.S. at 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545. See also: United States Gypsum Company v. National Gypsum Company and Plaza Plastering Co., 440 F.2d 510, 514 (7th Cir., 1971).

We are of the opinion that Claim 5 of the patent in suit meets all the applicable legal and statutory tests.

■ The judgment of the District Court holding Claim 5 of the Tompkins patent No. 2,896,857 valid and infringed is

Affirmed.

STEVENS, Circuit Judge (dissenting).

Each of the elements of claim 5 was an old concept; only the combination was new. The issue is whether the combination "would have been obvious at the time the invention was made to a person having ordinary skill in the art" of washing cars, or perhaps the art of making car-washing equipment. 35 U.S.C. § 103.

There are two ways to try to answer this question. One approach is to consider what was obvious to actual artisans. Many people for many years have been familiar with car-washing equipment. Yet Tompkins was the first to recognize the benefits to be gained from this unique combination of concepts. As a matter of fact, he was a pioneer in a crowd. If the combination was obvious, others in the crowd would certainly have recognized it. Under this approach the issues of novelty and obviousness tend to merge.

A second approach is to consider what would have been obvious to a hypothetical artisan who, having all of the prior art at hand, set out to design an improved car-washing machine. Such an artisan, although his skill might have been ordinary, would have commenced his work with a truly extraordinary background. With such preparation a host of valuable new combinations might be obvious to a man with ordinary skills. Under this approach the obviousness hurdle would make a patent a rare prize reserved to reward a person with creative talents transcending an ordinary artisan's skill. I think Congress has directed us to follow this second approach. See Graham v. John Deere Co., 383 U.S. 1, 14, 15, 19, 36, 86 S.Ct. 684, 15 L.Ed.2d 545.

We must therefore, assume that our hypothetical artisan was thoroughly familiar with the fact that a generally L-shaped configuration of spray heads, mounted in a manner that permitted en-

circlement of a car, would do a better washing job than various other configurations;[1] that encirclement could be achieved by mounting the spray heads on an endless, generally rectangular, overhead track;[2] and that an electric motor was a suitable substitute for manual operation.[3] With knowledge of these three concepts, in my opinion it would have taken no more than ordinary skill to foresee the advantages of combining them. I think the invention was "obvious" within the meaning of 35 U.S.C. § 103.

1. British Patent No. 171,025 to Baker, published October 20, 1954, describes a vehicle-washing apparatus with an L-shaped configuration of water spraying tubes which simultaneously spray the roof and a side while being moved around a vehicle.

French Patent No. 1,028,242 to Kousnetzoff-Poliakoff, published May 20, 1953, although describing a configuration which more clearly followed the contours of a vehicle than a simple upside down L, contemplated that general type of configuration.

"Il est bien entendu que la présente description n'a d'autre but que de préciser les caractéristiques de l'invention mais que celle-ci est susceptible de variantes dans les détails, suivant les différentes applications qui en seraient faites."

2. United States Patent No. 1,148,690 to Klingensmith, dated August 3, 1915, disclosed an "oblong-endless-channel-track * * * above the top of the vehicle positioned thereunder to be washed. * * *" P. 1 lines 44–45, 55–56. "By making the track oblong, an automobile may be placed thereunder in such a position that the hose may be swung, when in a substantially vertical position, completely around the automobile without striking the same." P. 2 lines 38–43.

3. Automatic car washing was disclosed by United States Patent No. 2,676,600 to Vani, dated April 27, 1954, and by United States Patent No. 2,703,579 to Merancy, dated March 8, 1955.