**ILLINOIS TOOL WORKS, INC.,**
**Plaintiff,**

v.

**SWEETHEART PLASTICS, INC., Maryland Cup Corporation, and Sweetheart Cup Corporation, Defendants.**

Nos. 66 C 1609, 67 C 888.

United States District Court
N. D. Illinois, E. D.

Sept. 9, 1969.

See also D.C., 267 F.Supp. 938, 286 F.Supp. 62.

Granger Cook, Jr., James P. Hume, Hume, Clement, Hume & Lee, Chicago, Ill., for plaintiff; Richard R. Trexler, Robert W. Beart and Michael Kovac, Chicago, Ill., of counsel.

Dugald S. McDougall, Chicago, Ill., and George L. Greenfield, Boston, Mass., for defendants.

MEMORANDUM OPINION

DECKER, District Judge.

Plaintiff Illinois Tool Works, Inc. seeks to enforce two Edwards patents, 3,139,213 and 3,091,360. Defendant Maryland Cup Corporation is the parent corporation of the other two defendants, Sweetheart Plastics, Inc. and Sweetheart Cup Corporation. Defendants have constructed an assortment of plastic containers which are charged with infringement.

These consolidated actions are a sequel to Illinois Tool Works, Inc. v. Continental Can Company 273 F.Supp. 94 (N.D.Ill. 1967), aff'd 397 F.2d 517 (7th Cir. 1968). Plaintiff there sued an infringer of the '213 patent. Totaling over forty pages, the District Court opinion and the Court of Appeals decision describe in detail the history of the '213 patent and Edwards' contribution to the art. Except as hereinafter noted, the discussion of the '213 patent printed at 273 F.Supp. 97-120 and 397 F.2d 517-521 applies equally to the '360 patent.

Edwards taught that thin wall plastic containers may be constructed so they do not wedge together when stacked. Maturing out of the same application, both

patents explain that a "Z" shaped cylindrical ring, if formed in the side wall of the container, will support nested cups so that only the shelves of the rings touch one another.[1] The '213 invention covers continuous stacking rings, while '360 encompasses interrupted rings.[2]

After discussing the patents' validity, the opinion will consider whether defendants' accused devices infringe the asserted claims.

## I.  VALIDITY

Defendants advance the usual defenses of anticipation and obviousness.  The invalidity attacks are virtually identical for both patents.

With respect to anticipation, Maryland Cup relies primarily upon Nias patent 1,766,226 [3] which describes a pleated paper container with a prior art rim stacker.[4]  The cover of a Nias cup snaps into a groove adjacent to the top of the container.  The upper portion of the cup must expand substantially to receive the lid; thus, if a stack of cups were dropped

or otherwise subjected to axial pressure, the cups would similarly enlarge so that the grooves of adjacent cups would become wedged together.  Therefore, although the specification states that the groove "limits the relative telescoping movement of the containers" (page 3, lines 79–80), the Nias cup structure facilitates jamming rather than stacking. Nias does not anticiate Edwards' inventions.[5]  See, e. g., Amphenol Corp. v. General Time Corp., 397 F.2d 431, 438 (7th Cir. 1968); Copease Mfg. Co. v. American Photocopy Equipment Co., 298 F.2d 772 (7th Cir. 1961).

Alleging obviousness, defendants next emphasize Louis H. Pfohl's earlier experience with undercut side walls in plastic products.[6]  In combination with prior art references such as Nias, Pfohl's expertise would purportedly have rendered Edwards' contribution obvious at the time of his conception.  But, Pfohl constructed rim stackers rather than using the Z side wall configuration; Pfohl was unable to produce a single container,

1. The Court of Appeals explained that: "this stacking arrangement provides protection against the wedging of stacked cups while at the same time utilizing the natural flexibility of thin wall plastic to cushion shocks and thereby prevent cup breakage during shipping." 397 F.2d 518.

2. Both sides agree that the two patents are extremely similar.  Thus, the defendants declared that: "All we need do at this point is to note that '360, as plaintiff assured the Court at trial, has precisely the same scope as '213 except for the matter of stacking-ring continuity."

3. Defendants also cite Geuder patent 795,-437, Braime British patent 16,878, and Miller patent 3,083,888.  These prior references have already been considered in detail by this court and by the Seventh Circuit.  See 273 F.Supp. 111–115 and 397 F.2d 519–520.

4. Also alleging anticipation, Continental Can Company emphasized a similar rim stacker in the earlier litigation.  See 273 F.Supp. 107.
Nias' rim portion constitutes the upper shoulder of the stacking facility, on which the lower shoulder of an adjacent cup rests.  In contrast, Edwards' inventions specify that, in addition to the rim, a separate upper shelf is provided in the side wall.

5. Nias recognized the problem presented by cups which wedge together in a stack, appropriately suggesting that the sides of two adjacent nested containers might be separated from one another.  But, the patent's proposed physical construction failed to solve the stacking difficulty. Defendants were unable to locate any commercial production under the Nias patent, perhaps because of the containers' jamming tendencies.

6. In addition to the Nias patent and Pfohl's plastics work, Maryland Cup's "new" evidence consists of (1) Edwards' trial testimony and (2) the Patent Office's classification system.  First, defendants maintain that the inventor's statements contradict the testimony he gave during the previous litigation; however, analysis of Edwards' respective statements demonstrates that substantially identical testimony was adduced at both trials.  Second, the government classification placing the plaintiff's two patents in class 220 ("Metallic Receptacles"), subclass 97 ("Stacking Devices"), is not particularly significant and does not constitute "new" evidence.

cup, dish, or box embodying Edwards' inventions.[7] Moreover, in their earlier consideration of Aldington patent 2,985,-354 and Nowak patent 2,749,572, the Patent Office, the District Court and the Seventh Circuit indicated an awareness of the undercutting technique. See 273 F. Supp. 113–115 and 397 F.2d 519.[8] At the time of Edwards' inventions, neither the '213 patent nor the '360 patent were obvious to one ordinarily skilled in the art. See, e. g., Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Gass v. Montgomery Ward & Co., 387 F.2d 129, 132 (7th Cir. 1967).

█ Defendants have failed to present persuasive new evidence in support of their invalidity allegations. See American Photocopy Equipment Co. v. Rovico, Inc., 384 F.2d 813, 815–816 (7th Cir. 1967). In fact, Maryland Cup's "new" evidence is less convincing than the defenses advanced by Continental Can in the earlier litigation.[9] Accordingly, each patent is valid and enforceable.

## II. INFRINGEMENT: THE '213 PATENT

█ The limits of the patent's claims have already been delineated in the preceding litigation. See 273 F.Supp. 119–120 and 397 F.2d 520–521. Except for two groups of containers, defendants concede infringement by their accused structures.

First, defendants' DF–106 current containers have slight nicks in the upper shoulders of the stacking facility. Claim 1 covers stacking rings which are "substantially circumferentially continuous," thus including the disputed containers within its literal language. Moreover, neither the function nor the result nor the means taught by Edwards are altered by the nicks. The only explanation for their presence is defendants' attempt to avoid infringement while simultaneously utilizing a Z shaped stacker.

Second, the accused CC–7, CC–9 and SQ–4 containers purportedly lack the following element:

"the configuration of said bottom in central axial cross-section being such as to enhance its resistance to deformation." Col. 4, lines 25–27.

The drawings, specification, and claims demonstrate that the patent is restricted to containers with specially constructed

7. Defendants emphasize one of Pfohl's plastic stands (DX I–21) which was designed as the base for a liquor advertisement. These stands did not, however, stack well. Rather than forming a compact, well spaced stack, a vertical aggregation of stands resembled a loose pile and could be easily jarred.

8. Prior to Edwards' inventions, numerous skilled designers in the plastic cup field attempted unsuccessfully to solve the stacking problem. See 273 F.Supp. 115–117 and 397 F.2d 519–520. For example, defendants' employees Shapiro and Davis failed to develop a satisfactory stacker until introduced to the patents' teachings.

9. To illustrate, defendants also maintain that the '360 claims are fatally indefinite and lack support in the specification. One of the elements of claim 1 is defined as follows:
"a rim of predetermined axial extent which is of sufficient increased thickness relative to the thickness of the thin plastic sidewalls to lend required lateral strength at said open upper end." (lines 7–10)
Maryland Cup asserts that is impossible to determine the amount of "increased thickness" that is "sufficient," or how much "lateral strength at said open upper end" is "required."
In the file history, both plaintiff and the patent examiner understood the preceding description to define a reinforced cup rim, in contrast to unreinforced ones in prior references such as Swift patent 2,088,181. At trial defendants' witness Davis had no difficulty comparing the patent's rim with rims displayed in the prior art.
The precise mathematical relationship for the rim structure was not a part of the patent's invention. Compare 273 F.Supp. 117–118. An artisan of ordinary skill would realize that the construction of a reinforced rim depends upon factors such as the type of material used in the cup, the thickness of the side wall material, the diameter of the upper end, and the axial height of the cup.

bottoms.[10] Since defendants' containers never rest on their bottoms, they have small bottoms which lack any means calculated to resist deformation.[11] Defendants' containers thus lack one of the patent's elements, together with its designated function. They therefore do not infringe. See, e. g., Edwards v. Hychex Products, 171 F.2d 259, 260 (7th Cir. 1948).

## III. INFRINGEMENT: THE '360 PATENT

The '360 patent describes an interrupted stacking ring which assures air communication between nested cups. In addition, cams may be added to the cups to separate the stacking shoulders of adjacent cups. Defendants advance three arguments to avoid infringement.

First, Maryland Cup asserts that all claims are limited to cups with cams, thus rendering patent figures 1–5 irrelevant to the invention. Claim 1 includes the following elements:

"circumferentially spaced portions of said stacking ring means located beneath and providing a support for said internal shoulder means, said support converging toward the cup axis from bottom to top * * * and at least one of said shoulder means having separate means associated therewith for cooperation with a shoulder means of a nested cup to provide a circumferentially discontinuous area to assure air communication between completely nested cups * * *" Lines 24–34.

Edwards testified that the wall portions (38), which create the interrupted construction of the stacking ring, insure air communication without cams.[12] Similarly, the specification explicitly declares that:

"As will be apparent, there is necessarily an air space between the bottoms of the adjacent cups, and the spaces 38 between the protuberances or nibs 36 provide air channels for venting air into this space. Thus, the cups do not wedge together, and also do not stick together due to air trapped in the cups." Col. 3, lines 44–49.

In the file history, both plaintiff and the patent examiner demonstrated repeatedly that they believed the claims were not limited to containers with cams.[13]

The projecting nibs (36) in figures 1–5 provide support for the internal

10. Thus, the '213 specification states that:
"the conical configuration of the central portion of the bottom [depicted as upwardly inclined] is of great importance, in that it prevents sagging of the bottom when the cup is filled with coffee or the like." Col. 2, lines 56–59.
Similarly, when applying the '213 patent to an accused structure of another alleged infringer, plaintiff's counsel declared that:
"[T]he following material structural elements were also added [to claim 1]:
(1) *the configuration of said bottom in central axial cross-section being such as to enhance its resistance to deformation* * * *" (Emphasis in the original.)

11. With respect to the CC–7 and CC–9 structures, the bottoms actually sag when filled with hot coffee. The cups are only used in conjunction with a rigid plastic holder which supports them above the table.
Illinois Tool Works stresses the containers' low diameter-to-thickness ratio. Inevitably, if a cup's bottom is reduced in size while its thickness remains constant, the ratio of these two factors will diminish.

12. Air passages are particularly useful at the moment completely nested cups begin to separate. Without a free flow of air, a vacuum would start to form, thus inhibiting the cups' separation.
As illustrated in figure 7, nibs (1936) are distinct from cams (140). The former are part of the stacking ring, being constructed so that the bottom shoulder is interrupted. Located beneath the stacking facility, the cams also assure air communication.

13. For example, on Septemper 13, 1962 the examiner stated that:
"Applicant states that claims 46 and 47 are identical with allowed claim 44. However, these claims 46 and 47 and claims 48–50 do not recite the depending protuberances [cams]."

shoulder (32) and converge toward the cup axis.[14] The nibs also increase the lateral strength of the stacking ring and enlarge the radial extent of the internal shoulder means. Therefore, claim 1's reference to "portions" of the stacking ring defines the projecting nibs (36) in figures 1–5.[15] Rather than being restricted to containers with cams, claim 1 encompasses the devices pictured in figures 1–5.[16]

Second, Maryland Cup contends that structures with the lower stacking shoulder located at the bottom of the cup do not infringe. While the Patent Office was processing Edwards' application, the claims' language was initially restricted to stacking facilities located above the bottom of the cup. By its amendment of February 14, 1969, however, the plaintiff removed this limitation with the following explanation:

"[C]laim 39 does not specifically limit the lower or external shoulder means

to being spaced above the bottom of the container, as in the case of claim 31 [subsequently cancelled]. It is believed that this limitation is unnecessary for patentability of the claim, when the interruption in the external shoulder means is specifically recited." [17]

Claim 1 declares that the invention includes:

"stacking ring means having at its lower extremity circumferentially disposed externally projecting shoulder means and having at its upper extremity circumferentially disposed internal shoulder means of smaller minimum diameter than the maximum diameter of said external shoulder means and spaced upwardly from said recessed bottom * * *" Lines 14–20.

The last phrase quoted above, "spaced upwardly from said recessed bottom," refers to the antecedent "internal

---

14. Defendants attempt to convert the stacking configuration "portions" into the wall spaces (38); however, the latter areas are shown as substantially vertical segments which do not converge toward the cup axis.

15. Maryland Cup stresses the patent examiner's May 1, 1959 request that Edwards "elect a single disclosed species" for further prosecution. Edwards thereafter designated the disclosure of figures 11–15 (containing cams) as its preferred species.
Patent Office rule 141, 37 C.R.F. 1.141, explains that various species may be covered in an application if a single generic claim encompasses all of the species. Thus, generic claims may be presented after an election of species so long as they also cover the designated species.
Recognizing that generic claims were still permissible, on April 14, 1961 the patent examiner invited Illinois Tool Works to submit:
"five or six claims directed to the generic and specific aspects of the elected species * * *"
Subsequent correspondence between the inventor and the Patent Office discussed proposed claims which encompassed containers without cams as well as those embodying them.

16. Claim 1 was deliberately structured to include containers with cams and those without them. The reference to "separate means" refers to the wall portions (38) in figure 1; but, in figure 14 that phrase defines the cams (736). Similarly, dependent claim 3 specifies that one means of air communication may be "circumferentially spaced sections of the cup wall material."

17. To counteract Edwards' disclaimer, defendants maintain that claim 1 includes continuous stacking facilities as well as interrupted ones. The patent carelessly characterizes figure 13 as having a "continuous ring." Since the lower external shoulder in figure 13 is circumferentially interrupted, though, the "continuous ring" language refers to the continuous intermediate section, rather than the interrupted intermediate sections depicted in figures 1–12. The specification thus states that:
"[T]he cups * * * [have] a continuous stacking ring, rather than the series of nibs, and lacking any slanting or wedging surfaces. Instead, the underside of the step or rest 434 is provided at circumferentially spaced locations with downward bumps or protuberances 444." Col. 5, lines 24–30.

shoulder means."[18] Thus, defendants' accused structures infringe the '360 patent even though the Z configuration is positioned at the bottom of the container.

Finally, defendants' CVP–9 devices allegedly do not embody a Z shaped configuration because the stacking structures also have vertical intermediate sections.[19] PX 107 is an enlarged cross-section of one segment of the stacking facility. The exhibit demonstrates that a Z undercut is present in CVP–9 containers, thereby creating the cups' stacking overlap. The structures' reverse taper allows nested cups to stack without jamming. The mere presence of vertical sections does not save the containers from infringement since the accused devices embody each of the elements specified in the patent. See, e. g., University of Illinois Foundation v. Block Drug Co., 241 F.2d 6 (7th Cir. 1957).[20]

## IV. CONCLUSION

The Nias reference does not anticipate either of Edwards' inventions. Although Pfohl had expertise in plastics undercutting, the patentee's contributions were not obvious at the time of their conception. Defendants have not presented persuasive new evidence which would warrant disturbing the earlier judgments of validity.

With respect to infringement, the '213 patent is infringed by all accused structures, except those in which the configuration of the bottom is not designed to resist deformation. The '360 claims encompass all challenged devices; claim 1 is neither limited to containers with cams nor restricted to stacking facilities positioned above the bottom of the structure.

Plaintiff shall prepare an appropriate judgment order by September 15, 1969. Neither side will be awarded attorneys' fees.

18. Defendants attempt to invert the contested clause so "spaced upwardly" describes "stacking ring means."

19. Due to the inoperative vertical segments, defendants characterize the containers as having "vertical stackers."

20. In addition, defendants argue that their stacking facility does not assure air communication since there may be an air seal in one out of six possible nesting positions. Nevertheless, air communication is insured more than 80% of the time, thus infringing under the claims of the '360 patent.