**ILLINOIS TOOL WORKS, INC.,**
Plaintiff-Appellee,

v.

**SWEETHEART PLASTICS, INC.,** Maryland Cup Corporation, and Sweetheart Cup Corporation, Defendants-Appellants.

No. 18215.

United States Court of Appeals,
Seventh Circuit.

Jan. 21, 1971.

Rehearing Denied Feb. 22, 1971.

George L. Greenfield, Wolf, Greenfield & Hieken, Boston, Mass., Dugald S. McDougall, Chicago, Ill., for defendants-appellants.

James P. Hume, Granger Cook, Jr., Hume, Clement, Hume & Lee, Chicago, Ill., for plaintiff-appellee; Richard R. Trexler, Robert W. Beart, Michael Kovac, Chicago, Ill., of counsel.

Before SWYGERT, Chief Judge, MAJOR, Senior Circuit Judge, and KERNER, Circuit Judge.

SWYGERT, Chief Judge.

■ This is a patent infringement action against Maryland Cup Corporation and its subsidiaries, Sweetheart Cup Corporation and Sweetheart Plastics, Inc., brought by Illinois Tool Works, Inc., the assignee of United States Patents Nos. 3,139,213 and 3,091,360. It has been consolidated with the defendants' declaratory judgment action filed prior to the commencement of the infringement action by plaintiff. The district court found the patents valid and infringed by certain of defendants' accused containers and entered its final judgment permanently enjoining further infringement and ordering an accounting as to past infringement.[1] Defendants appeal (1) the determination below that each of the patents is valid, (2) a factual determination of the district court that defendants' CVP–9 group of containers infringes the '360 patent, assuming its validity, and (3) the propriety of the district court's refusal to retransfer defendants' declaratory judgment action to the United States District Court for the Southern District of New York, where it was filed, from the Northern District of Illinois, where it had been consolidated with the infringement action filed later in Illinois. We affirm the decision of the district court on each of the three issues raised on this appeal.

### Introduction

Both patents at issue relate to the design and manufacture of nestable, expendable, thinwall plastic containers of unitary construction whose principal use is in applications which require dependable automatic dispensing of such containers, singly and in an upright position, so as to be ready to receive their contents with a minimum of human and mechanical effort. The principal demand for such containers has been in the automatic beverage vending and dairy industries for use as drinking cups and cottage cheese tubs, although the containers have also found useful application in restaurants and luncheonettes. The qualitative demands and conditions of use in automatic machines dispensing hot beverages are difficult to meet, and both patents relate to attempts to produce a container which would prove satisfactory and economical in such applications. Briefly, the problems of this endeavor included the necessity for virtually failure-proof separation of the bottom cup from a nested stack of identical cups (because such machines are unattended), an extremely adverse environment characterized by considerable heat and humidity, and the danger of damage to or jamming of such cups when shipped in a nested stack as is necessary to render them both economical to distribute and ready for their intended use. Because the demands of such applications are great, a container which was successful for automatic hot beverage dispensing would be attractive for other, less demanding uses.

The greatest similarity disclosed by a comparison of the two patents is the analytical approach disclosed by their language. Basically, Bryant Edwards, who was the inventor and assignor of both patents, focused in both instances on the use of resilient, thinwall plastic construction and on the use of Z-shaped, undercut (or reverse tapered), circumferential deformations of the cup wall below the upper rim so as to provide a resiliently yieldable "stacking ring" to separate nested cups slightly and minimize contact between them to achieve easy separa-

1. Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 306 F.Supp. 364 (N.D. Ill.1969). Enforcement of the judgment has been stayed pending this appeal.

tion as well as protect against damage in shipment. The basic difference between the '213 design and the '360 design is that the stacking ring in '213 is continuous, whereas in '360 it is discontinuous. However, as the parties have agreed, the differences in design and result between the two patents are such that they are mutually exclusive.

### I. Validity of the '213 Patent.

The '213 patent which defendants challenge as invalid issued on June 30, 1964 with eleven claims. It has been challenged previously in another infringement action in which, after full consideration of both anticipation and obviousness defenses raised therein, the district court held the patent valid and we affirmed.[2]

We note that the only new evidence now cited by defendants as supporting their assertion of the invalidity of the '213 patent is United States Patent No. 1,766,226 issued June 24, 1930 to H. Nias and W. Poster. The Nias patent relates to a pleated paper cup, the principal purpose of the design of which appears to have been an improvement in the effectiveness of the seal obtained when a disc-shaped cover was snapped down inside the container. The obvious effect of the insertion of the cover in such a container is substantially to distend and deform the container outwardly so as to grip the cover more positively than in the prior art. While Nias claimed that a part of his invention included the ability of the lid-restraining, circumferentially continuous ring located at the rim of the container to serve also as a stacking device to facilitate nested stacking, the nature of the design itself would render successful nesting and shipment logically impossible. As the district court said:

[I]f a stack of [Nias] cups were dropped or otherwise subjected to axial

pressure, the cups would * * * enlarge so that the [lid-receiving] grooves of adjacent cups would become wedged together. Therefore, although the specification states that the groove "limits the relative telescoping movement of the containers" * * *, the Nias cup structure facilitates jamming rather than stacking.[3]

We concur in the district court's analysis and its determination that the defendants did not sustain their burden of presenting "persuasive new evidence"[4] of the invalidity of this judicially approved patent. We again hold that the '213 patent is valid, unanticipated and nonobvious.

### II. Validity of the '360 Patent.

Edwards' '360 patent issued on May 28, 1963 with ten claims. The application from which the patent derived was filed October 29, 1958. Defendants challenge the validity of this patent on the grounds of anticipation and obviousness. Although the parties herein have treated the two defenses as if they represented opposite sides of the same coin, we shall separate them in recognition of their differences and in order to strive for greater clarity.

■ The defense of anticipation derives principally from 35 U.S.C. § 102(a) which provides:

A person shall be entitled to a patent unless—(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant * * *.

It has been held repeatedly that the defense of anticipation "is strictly a technical defense and unless all of the same elements are found in exactly the same situation and united in the same way to

---

2. Illinois Tool Works, Inc. v. Continental Can Co., 273 F.Supp. 94 (N.D.Ill.1967), aff'd, 397 F.2d 517 (7th Cir. 1968).

3. Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 306 F.Supp. 364, 365 (N.D. Ill.1969).

4. American Photocopy Equip. Co. v. Rovico, Inc., 384 F.2d 813, 815–16 (7th Cir. 1967).

perform an identical function, there is no anticipation." [5] Applying this definition of the defense to the state of the prior art in the instant case as described, *infra*, the Edwards' '360 patent was not anticipated by any of the inventions cited by defendants here or in the district court. Anticipation, however, speaks only to the novelty of an invention.[6]

■■■■ Conversely, the defense of obviousness raises the question of inventiveness and derives from 35 U.S.C. § 103. The obviousness test is somewhat broader in its restrictions on the issuance of valid patents, and prior art which does not render an invention anticipated may nonetheless make it obvious.[7] Section 103 provides:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.[8]

The Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), explained the analytical method to be utilized by courts confronted with the question of obviousness:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.[9]

Application of the foregoing method convinces us that the '360 patent is valid and nonobvious from the state of the prior art.

### A. The Prior Art.

Defendants cite three items, not of record reference in the '360 patent file, as constituting prior art which they contend establishes both that '360 was anticipated and obvious. As is apparent from the descriptions of the asserted prior art which follow, none of these items sufficiently approximates the '360 invention to satisfy the narrow anticipation defense. Moreover, none of them, independently or in combination, renders the invention obvious.

On this appeal defendants urge that the Caine cup, which antedated Edwards' '360 invention, renders '360 invalid. No patent for the Caine cup is of record in this proceeding, but examination of the specimen of Caine's container admitted as an exhibit in the district court reveals that it was a resilient thinwall plastic container of unitary construction displaying a flared rim, a recessed bottom and a circumferentially discontinuous, vertically walled stacking ring located below its rim. The stacking ring configuration of the Caine cup was not Z-

5. McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381, 398 (10th Cir. 1965), cert. denied, 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851 (1966). *Accord*, Walker v. General Motors Corp., 362 F.2d 56, 58 (9th Cir. 1966); Universal Marion Corp. v. Warner & Swasey Co., 354 F.2d 541, 545 n. 4 (10th Cir. 1965); National Lead Co. v. Western Lead Prods. Co., 324 F.2d 539, 544 (9th Cir. 1963); Stauffer v. Slenderella Syss., Inc., 254 F.2d 127, 128 (9th Cir. 1957).

6. *E. g.*, Amphenol Corp. v. General Time Corp., 397 F.2d 431, 437–38 (7th Cir. 1968).

7. *Id.*

8. 35 U.S.C. § 103 (1954).

9. 383 U.S. at 17–18, 86 S.Ct. at 694.

shaped, but rather its stacking protrusions display a vertically rectangular shape much on the order of a tiny box. Plaintiff's witness Welshon testified that the vertical shape of the protrusions of the Caine cup's stacking ring generated a tendency for nested cups to jam tightly together and that the cup was sold only for one or two years. Those statements were uncontroverted by defendants.

Defendants also assert that United States Patent No. 3,083,888, which issued on April 2, 1963 to W. L. Miller renders the '360 patent invalid. It is undisputed that the Miller patent constitutes prior art as against the '360 patent. The Miller patent discloses a two-piece composite cup largely composed of paper with a separate plastic bottom which is united with the paper barrel (or sidewall) by some adhesive process. The plastic cup bottom disclosed by Miller included a circumferentially discontinuous stacking ring characterized by reverse tapered deformations of the partial sidewall of the plastic bottom in a Z-shaped configuration. We note that, while the introductory specifications of the Miller patent refer to the object of wedge-free nesting and state that the plastic cup bottom should be "preferably resiliently yieldable," the cup is so constructed that, at the point of joinder of the plastic bottom with the paper sidewall immediately adjacent the stacking ring, there must be one layer each of paper cup material, plastic and adhesive around the entire periphery of the container. It is also apparent that the design would necessitate a roughly vertical seam where the paper cup material is joined

together so as to form the tapered sidewall from a flat sheet, thereby necessitating the presence of a five-layered seam at one point of the juncture of the bottom and the sidewall, the seam consisting of two layers of paper, two layers of adhesive, and one layer of plastic. Such a seam would necessarily impart increased rigidity to the entire cup, especially at the area immediately adjacent the stacking ring.

Finally, defendants assert that the so-called "Plaxall base" constitutes prior art as against the '360 invention. The Plaxall base was a thermoformed plastic base for an advertising display which was roughly pie-shaped with a Z-shaped, reverse tapered, circumferentially discontinuous ring located in its sidewall beneath the top, which was designed for the purpose of providing a snap-on connection with another part of the total display. It is apparent from the appearance, use, and construction of this base that it is not a cup and that it was not intended to stack in a compact, vertically nested configuration, nor did it do so. As the district court noted upon examination of a stack of such bases, "Rather than forming a compact, well spaced stack, a vertical aggregation of stands resembled a loose pile and could be easily jarred." [10]

### B. The Claims of the '360 Patent.

Of the ten allowed claims of the '360 patent, Claim 1 is the generic claim which sets out with greatest generality the distinguishing elements of Edwards' invention. The claim is set out in the margin.[11] The essential elements of the

10. Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 306 F.Supp. 364, 366 n. 7 (N.D.Ill.1969).

11. A one-piece nestable circular cup of thin walled plastic construction and of a size to be gripped and lifted by one hand, comprising a recessed bottom and a sidewall integral therewith, said sidewall being joined to said recessed bottom at a circumferential bottom margin and tapering generally upwardly and outwardly therefrom in diverging relation to an upper margin defining an open upper end, said upper margin having a rim of predetermined axial extent which is of sufficient increased thickness relative to the thickness of the thin plastic sidewalls to lend required lateral strength at said open upper end, said sidewalls having circumferential stacking ring means formed therein, positioned below said upper margin and having an axial extent greater than the axial extent of the thickened rim portion, said stacking ring means having at its lower extremity circumfer-

claimed invention are: (1) a one-piece, nestable circular cup; (2) constructed of thinwall plastic; (3) with a recessed bottom; (4) a reinforced rim at the top; (5) diverging taper in the sidewall from bottom to top; (6) circumferential deformations of the sidewall to form an internal shelf and an external shoulder which act as a stacking ring; (7) circumferential discontinuity of the stacking means assuring air passage between nested cups; (8) reverse tapering or undercutting of the internal stacking shelf (so as to form a Z-shape in the stacking ring); and (9) interaction of the structural design and construction material so as to impart resiliency to the whole unit to prevent jamming of nested cups when subjected to axial force. The other nine dependent claims need not be discussed other than to note they are minor variations on this theme.

### C. Difference Between Prior Art and the Claims at Issue.

The Caine cup differs from the '360 invention essentially in that its stacking ring is not reverse tapered or undercut so as to give the stacking ring a Z-shaped configuration. This feature of '360 imparted additional resiliency to the cup unit as a whole which was necessary to achieve wedge-free nesting without damage from reasonably anticipated axial force such as dropping. We conclude that the structural differences between Caine and '360 are such as to lead to the Caine cup's tendency to jam together and

its undisputedly short commercial life as established in the trial court, neither of which is true of the '360 cup.

The Miller invention also differs materially from the '360 invention. It is not a one-piece cup of thinwall plastic, but rather is a paper cup with a plastic bottom. As already noted, the structure of Miller's cup necessarily creates a reinforced band around the perimeter of the cup where the paper barrel or sidewall is adhesively connected to the plastic bottom closely adjacent to the stacking facility which is a part of the cup bottom. The stacking facility of the '360 invention is a circumferentially discontinuous, Z-shaped, integral deformation of the cup sidewall which allows the major part of the entire sidewall to distend and deform outwardly upon the application of great axial force to a stack of nested cups. Conversely, the structure of the Miller cup is such that the three-layered (paper-adhesive-plastic) circumferential juncture of the cup bottom with the separate sidewall and the five-layered seam occurring at one point of the juncture, all of which is placed immediately next to the stacking facility, cannot but impede the action of resilient deformation which all the witnesses have agreed is crucial to jam- or wedge-free nesting. Indeed, defendants' witness Davis conceded that the above described juncture did "provide a reinforcing band around the upper flange of the plastic bottom." The testimony of plaintiff's Edwards was unrebutted when he said that the

entially disposed externally projecting shoulder means and having at its upper extremity circumferentially disposed internal shoulder means of smaller minimum diameter than the maximum diameter of said external shoulder means and spaced upwardly from said recessed bottom, said internal shoulder means adapted to form a shelf to coact with the complementary external shoulder means of a like container to positively limit the extent of telescopic association of said containers, at least circumferentially spaced portions of said stacking ring means located beneath and providing a support for said internal shoulder means, said support converging toward the cup axis from bottom to top sufficiently to

increase lateral strength of the stacking ring means and to increase radial extent of the internal shoulder means, and at least one of said shoulder means having separate means associated therewith for cooperation with a shoulder means of a nested cup to provide a circumferentially discontinuous area to assure air communication between completely nested cups and consequent freedom of individual cup separation from a stack, the inherent flexibility of the thin plastic material of the cup in combination with the aforesaid structural features serving to impart resilient action to a stack of nested cups without jamming when such cups are subjected to axial pressure.

resiliency characteristic of the '360 cup was a function, at least in part, of the ability of the sidewall above and below the stacking facility resiliently to distort out-of-round. Even if we assume that paper cup material and thin plastic possess identical resilience in identical structures, the presence of the "reinforcing band" joint in close proximity to the stacking facility of Miller's cup logically compels the conclusion that a nested stack of such cups would be considerably less resilient upon the application of axial force than the '360 cup.

The differences between the Plaxall base and the '360 invention are obvious from our previous description of each and the observation of the district court in that regard so that further discussion here is unnecessary.[12]

### D. The Level of Ordinary Skill in the Art.

Defendants' witness Davis was possessed of a level of skill which certainly cannot be characterized as less than ordinary skill in the art of plastic cup and container design. We base this determination on several factors, chief among which are the fact that he was the inventor of another cup design patented in 1966 under United States Patent No. 3,-262,626[13] and the fact that without a college degree he has risen to the position of manager of product development of defendant Sweetheart Plastics, Inc.

We note that Davis was unable to produce a successful vending cup of the type here at issue for a considerable period after he was assigned the task of designing such a container even though the '360 design was incorporated into one of plaintiff's cups which was already on the market and widely advertised in trade journals contemporaneously with Davis' endeavors. While that fact alone seems sufficient to indicate that the '360 invention was not obvious from the prior art's teachings, we note further that, while the use of interrupted, reverse tapered stacking rings and unitary thinwall plastic construction were well-disclosed in the art long before Edwards invented the cup later patented under '360,[14] no other previous inventor had either combined these two concepts or produced a plastic container satisfactory for use in automatic hot beverage dispensing.

Defendants have stated (and plaintiff has conceded on oral argument) that if certain features of the Caine cup and the Miller cup were united in one structure the result would be the '360 container. But that merely begs the question of obviousness and invites us to participate

---

12. Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 306 F.Supp. 364, 366 n. 7 (N.D.Ill.1969).

13. The validity of this patent is not in issue here, and we note only that it reveals that Davis is skilled in the art.

14. We refer here only to United States patents to which reference is made in the patent office file which matured into the '360 patent, which were as follows:

| No. | Patentee | Date |
| --- | --- | --- |
| 703,745 | E. C. Seaman | July 1, 1902 |
| 795,437 | W. Geuder (Dec'd.) | July 25, 1905 |
| 1,937,402 | C. K. Cherry | November 28, 1933 |
| 2,088,181 | G. W. Swift | July 27, 1937 |
| 2,208,431 | A. J. Rochow | July 16, 1940 |
| 2,420,215 | L. M. Wiley | May 6, 1947 |
| 2,530,124 | R. J. Kieckhefer | November 14, 1950 |
| 2,563,352 | M. W. Morse | August 7, 1951 |
| 2,606,586 | D. W. Hill | August 12, 1952 |
| 2,630,244 | L. Brock | March 3, 1953 |
| 2,717,619 | K. Whitman | September 13, 1955 |
| 2,805,790 | R. E. Smucker | September 10, 1957 |
| 2,816,697 | W. E. Amberg | December 17, 1957 |
| 2,905,350 | B. Edwards | September 22, 1959 |
| 2,907,491 | P. C. Gunn | October 6, 1959 |

in more than a little of the omniscience that hindsight always allows. We believe it is far more telling that not only did Davis fail to outrace Edwards to the marketplace or the patent office with an operative product like the '360 invention, but Miller, Politis (who introduced Edwards to sheet thermoforming of plastic cups) and defendants' witness Pfohl also failed to do so as apparently did all others skilled in the art. We conclude that the '360 invention was not obvious from the prior art.

We are cognizant of the difficulties inherent in judicially testing the validity of "combination" patents, that is, those which relate to claimed inventions which combine old elements of an art often with only minor improvements to one such element or no elemental improvements at all. The Supreme Court has also been concerned with the analytical problems confronting courts in such instances as evidenced by the three major cases it has heard recently involving combination patents.[15] However, as the Court observed, "A combination of elements may result in an effect greater than the sum of the several effects taken separately."[16] This "synergistic effect"[17] test is especially applicable where, as here, the use of two or more elements together both increases the effectiveness of one of the elements *and* successfully achieves something denied the marketplace in the past. We are convinced that a major part of the functional success of the '360 invention derives directly from the fact that the unitary, thinwall plastic construction of the sidewall complements and enhances the resiliency of the reverse tapered, interrupted stacking device. Moreover, we are persuaded that this feature was the source of the functional success of '360 because it rendered the cups virtually invulnerable to damage and wedging

under reasonably expectable conditions of shipment and use.

Finally, we are obligated by the apparent simplicity of the '360 invention to note its remarkable commercial success. We are impressed by the fact that Illinois Tool Works and its licensees under the '360 patent have manufactured and sold several billions of such cups, with ITW alone having made and sold approximately two billion four hundred million. In addition, more than a dozen United States and foreign manufacturers have obtained licenses from plaintiff to manufacture cups covered by the '360 patent. We do not believe that the tribute of the trade and the marketplace can be ignored when it is so overwhelming in scope and magnitude.

Accordingly we affirm the finding of the district court that United States Patent No. 3,091,360 is valid, unanticipated and nonobvious.

### III.  Infringement of the '360 Patent.

■ Defendants urge us to set aside the determination of the district court that their CVP–9 group of cups infringes the '360 patent, assuming its validity. They argue that, since the design is such that their cups may fail to function properly if the cups are nested in one of several possible degrees of rotation in relation to each other, they do not infringe. We are unconvinced. We agree with the district court that "the accused [CVP–9] devices embody each of the elements specified in the patent."[18]

### IV.  Propriety of the Refusal to Retransfer.

■ Title 28 U.S.C. § 1404(a) provides for the transfer of a civil action to any district of proper venue "[f]or the convenience of parties and witnesses, in

15. Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

16. Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 61, 90 S.Ct. 305, 308, 24 L.Ed.2d 258 (1969).

17. Id.

18. Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 306 F.Supp. 364, 369 (1969).

the interest of justice." Defendants argue that transfer of their earlier filed declaratory judgment action from the United States District Court for the Southern District of New York was improper. If it was, defendants should have raised that issue in the Second Circuit, not here. Purex Corp. v. St. Louis Nat'l Stockyards Co., 374 F.2d 998, 1000, cert. denied, 389 U.S. 824, 88 S.Ct. 59, 19 L.Ed.2d 77 (1967). As to the propriety of the denial of their motion to retransfer by the district court for the Northern District of Illinois, we hold that the defendants did not sustain their burden of establishing the propriety of the retransfer.[19]

The judgment of the district court is affirmed in all respects.

---

19. 1 J. Moore, Federal Practice ¶ 0.145 [5], at 1777 (2d ed. 1964).