**GETTELMAN MFG., INC., et al.,
Plaintiffs,**

v.

**LAWN 'N' SPORT POWER MOWER
SALES & SERVICE, INC.,
Defendant.**

**No. 69–C–543.**

United States District Court,
E. D. Wisconsin.

March 11, 1974.

**612**

Michael, Best & Friedrich by Gerrit D. Foster, Milwaukee, Wis., for plaintiffs.

Grodin & Strnad by Burton A. Strnad, Milwaukee, Wis., Woodling, Krost, Granger & Rust by Bruce B. Krost, Cleveland, Ohio, for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The plaintiffs commenced this action claiming that the defendant's snowthrowers, MTD Sno-Flite Thrower Series models 219–600, 219–700 and 219–800, infringe claims 1, 5 and 8 of patent number 2,770,894 issued to plaintiff R. O. Gettelman. The defendant has counterclaimed for a declaratory judgment of invalidity and non-infringement. All parties agree that this court has jurisdiction of the parties and subject matter, that venue is proper, that the plaintiffs have title to the patent in suit and have the right to bring this action, and that the defendant did sell an allegedly infringing machine within this district prior to the filing of the complaint.

A trial to the court has been held, and counsel have submitted post-trial briefs. The plaintiffs rely primarily on the presumption of validity of the Gettelman patent and the obvious similarity of a snowthrower received in evidence which was manufactured by the defendant and is stipulated to be similar to the one sold. The defendant refers to several earlier patents and urges the view that the claims of the Gettelman patent were anticipated by the prior art. 35 U.S.C. § 102. It is also claimed that the subject matter of the patent in suit was obvious at the time of filing. 35 U.S.C. § 103. Finally, the defendant claims that the disclosures of the patent in suit are insufficient to meet the requirements of 35 U.S.C. § 112.

After trial, the defendant moved to dismiss the complaint as to claims 5 and 8 on the ground that there had been no evidence of infringement. That motion was taken under advisement and will now be denied. The claims are in evidence as is the defendant's machine. It is the court's view that there is sufficient evidence upon which to assess the infringement charge.

## I. VALIDITY

### A. Anticipation

Mr. Gettelman designed a two stage snowthrower. The primary mover is referred to as a "feeder reel". The feeder reel has an axis of rotation transverse to the direction of travel, and it rotates in the same direction as the machine's wheels during forward travel. Angled blades are mounted on a shaft to form the feeder reel. They are diametrically disposed in such a manner that upon forward movement of the machine and rotation of the feeder reel, the blades assist forward movement, break up the snow and convey the snow toward a small open space between the blades at the center of the machine.

Simultaneously with the feeder reel's operation, the secondary mover, which is referred to as a "rotor", rotates at a higher speed than the feeder reel and ejects the snow moved by the feeder. The rotor is also on an axis transverse to the direction of the machine's travel. It consists of a mounting plate with evenly spaced blades projecting therefrom perpendicularly to the rotor's axis. The rotor is mounted behind the feeder reel in such a position that the peripheral circumferential path of travel of the rotor is behind the axis of the feeder reel, but close enough so that there is overlap of the blades of each. The effect is that the rotor blades reach into the area between the feeder reel blades and remove the snow that has been lat-

erally conveyed from each direction by the feeder reel blades. The removal is accomplished by the higher speed impeller action of the rotor which revolves in the same direction as the feeder reel axis and directs the snow along the rear housing of the rotor up the discharge chute where it is released in the direction desired.

The defendant claims that the prior art consists of earlier snow remover.patents and other material handling device patents, particularly those relating to harvesting mechanisms. Most of the prior art patents asserted by the defendant were not cited by the patent office in the patent history or file wrapper. The best prior art, according to the defendant's expert, is the "Ritchie" patent, number 2,482,213, which was not cited by the patent office. The plaintiffs suggest that "SWISS I", Swiss patent number 207,053, which was cited, is the best. The plaintiffs also strongly urge that the patents relating to harvesting mechanisms should not be considered because they are non-analogous art.

There is no dispute that the use of a feeder reel in conjunction with a higher speed rotor was not novel. The parallel positioning of the feeder reel and rotor axes, both transverse to the path of travel, was common as well. The allegedly unique claim of the patent in suit, as evidenced by the amendment necessary to overcome the patent examiner's initial rejection, was the positioning of the rotor with respect to the feeder reel. By arranging the rotor and feeder reel so that the peripheral circumferential path of travel of the rotor was behind the axis of the feeder reel but in partial overlap with the feeder reel's peripheral circumferential path of travel, the patentee claimed to have assured that the rotor would not engage unbroken snow, yet would completely eject collected snow faster than it could accumulate and pack between the feeder reel blades. These facts were said to be the crucial elements in accomplishing the primary object of the patent in suit, to provide a snow remover "which will not clog with

wet and heavy snow conditions and which may be operated by a relatively small economic pedestrian-guided power tractor".

On the basis of the testimony presented at trial, I find that the patentee is correct as to his factual representations concerning the operation of his machine. The evidence shows that the relative positioning and relative speeds of the feeder reel and rotor described do preclude contact between the rotor and unbroken or packed snow. That evidence also shows that such contact, in heavy or wet snow conditions, would slow down the rotor so that it would not act as a blower unless an uncommercially feasible amount of power were used. Obviously the need for such an amount of power would defeat the object of the patent.

The first question then is whether the concept embodied in the plaintiffs' claims was anticipated by the prior art. Most of the earlier snowplow and snow remover patents relied on are clearly not anticipatory. Several involve rotors forward of or on the same axis with the feeder reel. Others utilize a rotor which is mounted on an axis transverse to the axis of the feeder reel. Some do not incorporate the essential rotation speed relationship. Only three of the patents presented are similar enough to warrant individual comment.

Swiss I was utilized by the patent office in rejecting Mr. Gettelman's original application. He succeeded in convincing the examiner that his invention was patentable over Swiss I, however, by emphasizing that his design would not allow the rotor to engage unbroken snow. The design embodied in Swiss I would allow snow to reach the rotor from the front at the same time as snow is engaged by the feeder reels for delivery to the side of the rotor. Having the rotor engage snow initially was apparently not thought to be a problem, for some breaking of the snow was to be accomplished by stationary blades mounted in front of the rotor and feeder reels. Furthermore, there was no attempt to minimize the need for power to motivate

the rotor because the entire device was intended to be mounted on, and take its power from, a crawler tractor or other motor vehicle. Therefore, I agree with the patent office that Mr. Gettelman's invention was not anticipated by the Swiss I patent.

As noted, however, the defendant urges that Ritchie, which was not considered by the examiner, is the best prior art. I agree with the defendant on that assertion, but I do not agree with its analysis. The defendant suggests that the blades (numbered 144 in the patent diagrams) arranged on a shaft (140) constitute a conveyor similar to the feeder reel in the patent in suit. Since the axis of this "conveyor" is forward of the peripheral circumferential path of travel of the rotor, with partial overlaps of the blades of each, the defendant argues that Ritchie discloses "in every way" the Gettelman snowthrower. The error in this statement lies in the fact that the shaft and blades referred to are not a conveyor but a breaker device positioned forwardly of the actual conveyor and capable of being raised to an inoperable position when not needed. Its primary purpose is to break up snow prior to contact with the screw type conveyor on shaft number 40. This conveyor, like the feeder reel in the Gettelman patent, moves the snow laterally to the rotor (77) where it is picked up by the rotor blades and ejected in the same fashion as in the Gettelman machine. Again, however, the peripheral circumferential path of travel of the rotor is not rearward of the axis of the feeder reel or conveyor. The axis of the rotor is rearward of and above the axis of the feeder reel, but the diameter of the rotor is so much greater than that of the feeder reel that the blades of the rotor reach in front of the feeder reel along part of the path of rotation. It is clear that the rotor will contact unbroken snow during rotation, at least when the snow is of a minimal depth. Indeed, the written description points out that some initial snow engagement will be made with the rotor.

The parties disagree as to whether the shorter breaker blade immediately in front of the rotor will actually break up snow prior to contact with the rotor blades. I do not believe the question is important, because the question of anticipation must be determined by whether the *conveyor* breaks up all snow prior to delivery to the side of the rotor. That question has been answered negatively in view of the disclosed initial engagement by the rotor. Like Swiss I, therefore, Ritchie cannot be said to have anticipated the patent in suit in the sense that anticipation is described in 35 U.S. C. § 102.

Patent number 1,587,449, referred to as "Wandsheer I", clearly shows a fan mounted on an axis parallel to and with its peripheral circumferential path of travel rearward of the feeder reel. There is no overlap, however. Even if there were overlap, Wandsheer I could not properly be considered as anticipatory. Its rotary fan is not an impeller device as in Gettelman, Swiss I and Ritchie because it does not receive and eject snow moved into a housing. It does no more than aid in scattering snow falling off the side of the conveyor.

■ It is the court's conclusion that the defense of anticipation is not available on the strength of the earlier snow remover patents. Anticipation derives from 35 U.S.C. § 102(a) and requires a showing that all of the elements of the patent in suit are found in the earlier inventions in exactly the same situation and related to each other in the same fashion to perform an identical function. Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 436 F.2d 1180, 1182–1183 (7th Cir. 1971), cert. dismissed 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722 (1971). None of the earlier devices positioned an impelling rotor on an axis parallel to the conveyor axis with the rotor's peripheral circumferential path of travel rearwardly of the conveyor axis but in partial overlap with the conveyor blades. Consequently, the elements of the earlier patents cannot be said to relate to each other in the same fashion.

The defendant also bases its claim of anticipation on the prior art evidenced by several earlier patents on combines and harvesting devices for grain. It is conceded that at least one of these (number 2,455,905) has an impeller device with a peripheral circumferential path of travel rearward of the feeder reel but close enough thereto so that the impeller fingers reach between the feeder reel blades and extract cut grain. In addition to other objections, however, the plaintiffs urge that these patents concern non-analogous art, and, therefore, are inapplicable. Nordberg Mfg. Co. v. Woolery Machine Co., 79 F.2d 685 (7th Cir. 1935). The defendant refers to an amendment successfully sought by the patentee which changed the recitation of claim 8 from "snow" handling device to "material" handling device. It is contended that this amendment broadened the claim and makes references to grain handling devices such as harvesters relevant. The plaintiffs counter this argument by pointing out that the amendment was sought because the patentee had used the machine on flake ice as well as snow.

The principal question, regardless of the significance of the change in wording, is whether the harvesting mechanisms perform an "identical function" as Illinois Tool Works, Inc., requires for anticipation. On the basis of the evidence presented to the court, that question must be answered negatively. In the snowthrower, initial contact with the snow is sought to be made with the feeder reel. This assures that the snow will be removed from the ground and conveyed to a small opening where it can be picked up and disposed of by the rotor. The rotor is placed behind the feeder reel and rotated at a higher speed so that the cut snow, particularly when wet and heavy, will be immediately disposed of.

A harvester of the type relied on here performs a different function. Initial contact and cutting of the grain are done with a scythe bar positioned in front of the feeder reel. The impeller fingers make substantial initial engagement of the cut grain because of the wide space between the inner ends of the diametrically disposed conveyor blades. Unlike the snowthrower situation, such initial engagement is desirable here. The grain is already cut, does not present the difficulty of wet, heavy snow, and can be moved directly to the rear collector from the impeller. Indeed, the function of the feeder reel is not to cut the grain for the impelling process but simply to move the grain toward the center. The effect of this is to allow a wide path of material to be gathered while using a narrower machine. More simply stated, the principal element of a harvester is the impeller with the feeder reels doing no more than expanding its useful breadth; the principal element of a snowthrower is the feeder reel with the rotor doing no more than getting previously plowed snow out of the way.

B. Obviousness

Obviousness is also claimed as a defense by the defendant, although it is treated almost as a corollary of anticipation. The defense of obviousness arises under 35 U.S.C. § 103 and must be treated separately.

"The obviousness test is somewhat broader in its restrictions on the issuance of valid patents, and prior art which does not render an invention anticipated may nonetheless make it obvious." 436 F.2d at 1183.

Here the patentee essentially made a machine similar to those described in Swiss I and Ritchie and moved the rotor rearward so that it would not contact snow before it had been acted upon by the feeder reel. The rotor remained transverse to the path of travel and was placed so that it could freely revolve behind the axis of the feeder reel but would overlap the blades of that reel, thereby reaching into the area to which snow was laterally conveyed by the reel. Was this modification truly inventive or was it obvious?

Clearly, no one had successfully presented such an idea to the patent of-

fice before Mr. Gettelman did. It is also apparent that the problem was recognized. Most of the prior art patents were for snowplow structures designed to be operated on motor vehicles. Thus, considerable power to operate the rotor was available when heavy or wet snow was encountered, and the need to protect the rotor from initial engagement was not as great. Even so, however, several of the prior art patents show that steps were taken to reduce or eliminate such engagement. Rakes, breakers or diverters were placed immediately in front of most of those rotors which protruded beyond the feeder reels. In other cases the rotors were placed behind the reels, usually on axes transverse to the axes of the feeder reels. Considering these facts and the testimony offered at trial, it must be concluded that there was a need for an arrangement between the primary and secondary movers that would provide for efficient and thorough discharge of snow, particularly under wet and heavy snow conditions. For machines designed to be small and pedestrian guided, this need was paramount. Otherwise, the amount of power required could destroy the usefulness of the machine.

Several examples of prior art submitted by the defendant tend to demonstrate not only the interest in solving the aforementioned problem, but also the approaches which were taken toward that end. Swiss Patent number 220,693 (Swiss II) was originally presented to the court in a motion for summary judgment to support the defendant's claim of anticipation. That claim was rejected because it was unclear from the diagrams and written descriptions accompanying the patent whether the device had the same arrangement between feeder reel and rotor as the Gettelman patent. Testimony at trial has not improved the defendant's position in this respect. Swiss II's significance here, however, has to do with the inventor's commentary on the problem ultimately solved by Mr. Gettelman. In Swiss II, which was recorded in 1942, the inventor stated:

". . . in the case of all known snow removing machines, the snow must be pressed by the snow cleaning and cutting devices [feeder reels] into the transport spaces of the centrifugal wheels [rotors]. In the case of plugging, which cannot be avoided by this method, the centrifugal wheels which run at high speeds must first cut the compacted snow all over again."

His solution to the problem, unlike Mr. Gettelman's was to arrange the centrifugal wheels "perpendicular to the snow cutters, whereby the centrifugal wheels are simultaneously equipped with deflection surfaces."

Perhaps the most telling patent is number 2,587,415 granted to Isak Vanick in 1952, the same year Mr. Gettelman filed his application. This is the only example of prior art advanced by the defendant which is purely a pedestrian guided snowthrower. Again, the inventor recognized the problems of rotor contact with unbroken snow and clogging caused by packing of wet sticky snow. The initial problem was possible even though the rotor was placed behind and transverse to the feeder reel, because a rather large space was allowed between the interior ends of the feeder reel blades. The proposed solution was found in the placement of a diverting wedge in front of that spot, thereby diverting snow to positions in which it could be acted on by the feeder reels. The clogging problem was approached by placing a tight, close housing around the back and at the sides of the feeder reel. The object, of course, was to insure that snow would have no place to accumulate between the time it was contacted by the feeder reel and forced into the rotor for ejection.

When Mr. Gettelman filed his application, he demonstrated a new method of solving the problems which, as has been shown, were plaguing inventors working on snow removal machines. By placing the rotor on an axis parallel to the feeder reel axis but positioned rearwardly so that the peripheral cur-

cumferential path of travel was behind' the feeder reel axis, he avoided the problem of rotor engagement with unbroken snow. Furthermore, by overlapping the paths of the blades of each mover, he designed a means whereby the rotor blades could reach into the area where snow was deposited by the feeder reel and eject it before it could accumulate into a practically unmanageable amount. It is apparent that such a result was being sought by others familiar with the art at that time. It is also apparent that the approaches they took were not even close to that taken by Mr. Gettelman. Perhaps the novelty, as well as the usefulness of the Gettelman idea is best exemplified by the statement of Mr. Phelps, one of the witnesses at trial. When asked whether the idea was obvious at the time, that witness indicated that it certainly was not, and that he wished he had thought of it. It must be concluded, therefore, that the improvements the patentee made were not obvious but were definitely inventive.

## C. Sufficiency of Description

■ Finally, the defendant urges that the patent in suit must be found invalid because it does not conform to the requirements of 35 U.S.C. § 112. It is claimed that "the patent description and drawings are so sparse and skimpy that they do not disclose the critical factors that must be met in making an operative device." Section 112 requires, in part:

> "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person, skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

On the basis of the exhibits and testimony presented, I find that the defendant's challenge on this ground must fail.

The inventive concepts, as described in the claims involved in this suit, appear to be sufficiently detailed in the patent. Relative position and relative speed of the movers are stated. Furthermore, I fully accept the testimony of the plaintiffs' witness, Mr. Phelps, that he would be able, as a result of his study of the patent, to construct and use a snowthrower utilizing the unique characteristics of the one in suit. These factors compel the conclusion that the specifications are precise enough "to warn others skilled in the art against infringement, and to enable them to benefit from the teachings of the patent." Ellipse Corporation v. Ford Motor Company, 452 F.2d 163, 170 (7th Cir. 1971). See also Deep Welding Inc. v. Sciaky Bros., Inc., 417 F.2d 1227, 1241 (7th Cir. 1969); Pambello v. Hamilton Cosco, Inc., 377 F.2d 445, 447 (7th Cir. 1967).

## II. INFRINGEMENT

■ The defendant's contentions of invalidity having been rejected, there remains for consideration the question of infringement. No serious argument is made by the defendant. In addition to asserting that the claims are invalid and, therefore, cannot be infringed, he suggests that no evidence of infringement of claims 5 and 8 has been offered. However, there is such evidence before the court. An examination of the diagrams and the defendant's own machine clearly show the similarities. Furthermore, the stipulation filed on October 17, 1973, contains the admissions that the defendant's machines have a feeder reel, a rotor on a parallel axis, an overlapped relationship between those movers, and the same direction of rotation. Manual rotation of the feeder reel of the defendant's machine demonstrated the higher rotation speed of the rotor and the manner in which the rotor blades reached into the area between the ends of the conveyors. There can be no doubt that claims 1, 5 and 8 of the patent are infringed by the defendant's machines.

**618**

### III. CONCLUSION

For the above-stated reasons, the court finds that the plaintiffs are the owners of the patent in suit U. S. No. 2,770,894; that claims 1, 5 and 8 of that patent are valid under the provisions of 35 U.S.C. §§ 102, 103 and 112; and that claims 1, 5 and 8 are infringed by the accused device.

Therefore, it is ordered that the defendant's motion to dismiss the action as to claims 5 and 8 be and hereby is denied.

It is also ordered that judgment be entered for the plaintiffs on the issues of validity and infringement.

It is further ordered that the defendant's counterclaim be and hereby is dismissed.

It is further ordered that attorneys' fees under the provisions of 35 U.S.C. § 285 not be awarded as part of the costs, pursuant to stipulation of the parties.